1 LAW OFFICES OF LES ZIEVE
  TIMOTHY M. RYAN [SBN 178059]
2 30 Corporate Park, Suite 450
  Irvine, California 92606
3 Telephone:  (714) 848-7920
  Fax:  (714) 908-2615
4 tryan@zievelaw.com

5 Attorney for Defendant
  REVERSE MORTGAGE SOLUTIONS, INC, dba SECURITY ONE LENDING
6

7

8            **UNITED STATES DISTRICT COURT**

9     **NORTHERN DISTRICT OF CALIFORNIA-SAN FRANCISCO DIVISION**

10

11 RICHARD A. CANATELLA, individually, and    **CASE NO.:** CV135937
   as TRUSTEE OF THE CANATELLA FAMILY
12 TRUST,                                     *Assigned to Hon. Judge Jacqueline Scott Corley*

13              Plaintiff.                    **DEFENDANT REVERSE MORTGAGE
                                              SOLUTIONS, INC.'s, NOTICE OF MOTION
14         v.                                 AND MOTION TO DISMISS PLAINTIFF'S
                                              COMPLAINT; [PROPOSED] ORDER**
15 SHAUN DONOVAN, SECRETARY UNITED
   STATES DEPARTMENT HUD, REVERSE            **FRCP 12(b)(1); FRCP 12(b)(6)**
16 MORTGAGE SOLUTIONS, INC., dba
   SECURITY ONE LENDING
17                                            Date:        April 17, 2014
                                             Time:        9:00 a.m.
18              Defendant(s).                 Courtroom:   F – 15th Floor

19

20

21

22      **TO THE ABOVE-NAMED COURT AND TO ALL PARTIES AND THEIR**

23 **RESPECTIVE ATTORNEYS OF RECORD:**

24      **PLEASE TAKE NOTICE** that on April 17, 2014, at 9:00 a.m., in Courtroom F of the

25 above-entitled court located at 450 Golden Gate Avenue, San Francisco, California, Defendant

26 REVERSE MORTGAGE SOLUTIONS, INC. will and does move this Court to dismiss the

27 complaint of Plaintiff RICHARD A. CANATELLA with prejudice.

28 / / /

This motion is made and based upon Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Said motions will be based upon this notice of motion and motion, memorandum of points and authorities, the pleadings and papers on file in this action and on such evidence as may be presented at hearing.  The relief sought by this motion by movant is dismissal of the Complaint filed by Plaintiff RICHARD A. CANATELLA on December 23, 2013, in the above captioned case.

DATED:  February 19, 2014                    LAW OFFICES OF LES ZIEVE

                                             By:  _/S/ TIMOTHY M. RYAN_____
                                             TIMOTHY M. RYAN
                                             Attorney for Defendant
                                             REVERSE MORTGAGE SOLUTIONS, INC.,
                                             dba SECURITY ONE LENDING

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITES ............................................... 1

    1.    INTRODUCTION ................................................................................ 1

ARGUMENT .............................................................................................................. 2

    1.    STANDARD OF REVIEW ON MOTION TO DISMISS ................... 2

        A.    FRCP Rule 12(b)(1) ................................................... 2

        B.    FRCP Rule 12(b)(6) ................................................... 2

    2.    PLAINTIFF CANNOT ESTABLISH SUBJECT MATTER JURISDICTION ................................................................................... 3

        A.    Federal Question Jurisdiction Does Not Apply, as Plaintiff Does Not Establish a Private Right of Action ................... 3

            1.)    24 C.F.R §§ 206.33 to 206.41 Do Not Give Private Causes of Action ................................................... 4

            2.)    12 U.S.C.A. § 1715z-20 Merely Authorizes the Secretary of HUD to Create a Mortgage Insurance Program ............ 4

            3.)    Plaintiff Does Not Plead Discrimination Under 15 U.S.C. § 1691 ............................................................ 5

            4.)    The HUD Handbook Does Not Give an Underlying Cause of Action ................................................... 5

        B.    Plaintiff Cannot Prove the Amount in Controversy is Sufficient to Establish Diversity Jurisdiction ................... 6

            1.)    Plaintiff's Amount in Controversy is Based Entirely on a Speculative Theory ........................................ 6

            2.)    Plaintiff's Calculation of the 'Amount in Controversy' is Beyond Expectation of Recovery ................... 8

    3.    PLAINTIFF HAS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES PRIOR TO FILING THIS SUIT ................... 9

        A.    Plaintiff Has Not Taken Any Requisite Steps to Exhaust Administrative Remedies ................................... 9

    4.    PLAINTIFF DOES NOT HAVE STANDING TO BRING THIS SUIT ........ 12

        A.    Plaintiff Cannot Establish "Injury in Fact" ......................... 13

        B.    Plaintiff's Injury is Purely Hypothetical in Nature and Not Redressible by a Favorable Decision ................... 13

1.)   Plaintiff Cannot Prove He Would Have Obtained a Reverse
Mortgage from RMS with Different Analysis ................................13

2.)   Denial of a Reverse Mortgage is Not an Injury that is
"Concrete" and/or "Immediate" in Nature ....................................14

**C.**   **Plaintiff Admits His Injury is Not Redressable**........................15

**5.**   **PLAINTIFF CANNOT ASSERT A CLAIM UNDER THE
DECLARATORY JUDGMENT ACT** ................................................15

**A.**   **Plaintiff's DJA Claim Fails, as he has No Underlying Claim for
Relief**............................................................................................15

**B.**   **Plaintiff Cannot Show an 'Actual Controversy Between the
Parties'** .......................................................................................16

**6.**   **CONCLUSION** .........................................................................18

## TABLE OF AUTHORITIES

**Federal Cases**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937)..................................15

*American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) ...............................3

*Bell Atlantic Corp. v. Twombly*, 550 US 544, 556 – 57 (2007) ...............................................2

*Bennet v. Donovan*, 703 F.3d 582, 584-85 (D.C.Cir.2013) ....................................................14

*Canatella v. State of California*, 304 F.3d 843, 847 (9th Cir. 2001) ......................................7

*Cannon v. University of Chicago*, 441 U.S. 677, 688 (1979) .................................................3

*Chavez v. I.N.S.*, 17 F.Supp.2d 1141, 1143 (S.D. Cal. 1998) ...............................................2

*Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994) ......................................3

*Conley v. Gibson*,  355 U.S. 41, 45 – 46 (1957) ...........................................................3

*Conrad Assoc. v. Hartford Acc. & Indem. Co.* (N.D. Cal. 1998) 994 F.Supp. 1196.......................7, 8

*Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.* 642 F.3d 849, 853 (9th Cir.2011) ....16

*De La Cruz v. Tormey*,  582 F.2d 45, 48 (9th Cir. 1978)....................................................2

*Dillon v. Combs*, 895 F.2d 1175, 1177 (7th Cir.1990) .....................................................4

*Gaus v. Miles*, 980 F.2d 564, 567 (9th Cir.1992) ........................................................7

*Hells Canyon Preservation Council v. U.S. Forest Serv.* 593 F.3d 923, 932 (9th Cir. 2010)............12

*Jones v. Hobbs*  745 F.Supp.2d 886 (E.D.Ark.2010) ......................................................16

*Junod v. Dream House Mortg. Co.* (C.D. Cal., Jan. 5, 2012, CV 11-7035-ODW VBKX) 2012.......16

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)............................................2

*Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir.1995) ...............................................3

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ...........................................2, 12, 14, 15

*MacKay v. Pfiel*, 827 F.2d 540, 543 (9th Cir. 1987).....................................................2

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) .................................17

*McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) .........................................................10

*McKart v. United States*, 395 U.S. 185, 193 (1969) ....................................................10

*McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 181-190 ....................................6

*Me Lee v. LNV Corp.* (C.D. Cal., Apr. 10, 2012, 2:11-CV-8204-ODW) 2012 ...............................16

*Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 812, (1986) ...................................... 3

*Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14-15 (1981)............... 4

*Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938) ................................................. 10

*Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2nd Cir.1997) ...................................................... 16

*Northern Air Cargo v. U.S. Postal Serv.* 674 F.3d 852, 861 (D.C. Cir. 2012) ................................... 11

*Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004)........................................................ 12

*Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (2002)........................................................................... 11

*Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2nd Cir. 2009)................................................. 2

*Ridder Bros., Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944) ....................................................... 6

*Scientex Corp. v. Kay* 689 F.2d 879, 883 (9th Cir. 1982)............................................................... 4, 6

*Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) .................... 3

*Smith v. Industrial Valley Title Ins. Co.*, 957 F.2d 90 ...................................................................... 4

*Smithers v. Smith*, 204 U.S. 632, 643 (1907)................................................................................ 8, 9

*Team Enterprises, LLC v. Western Inv. Real Estate Trust*, 721 F.Supp.2d 898, 911 (E.D. Cal. 2010) ..................................................................................................................................................... 16

*Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir.1996.)................................................................. 3

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15 (1979)............................. 4, 5

*Twombly,* 550 US 544, 556 – 57 (2007) .................................................................................... 6, 14

*United States v. L.A. Tucker Truck Lines, Inc.* (1952) 344 U.S. 33..................................................... 11

*Wickland Oil Terminals v. Asarco, Inc.* (9th Cir. 1986) 792 F.2d 887............................................ 17

*Yoder v. Assiniboine and Sioux Tribes of Fort Peck Indian Reserv., Mont.* (9th Cir. 1964) 339 F.2d 360 ..................................................................................................................................................... 8

**Federal Statutes**

15 U.S.C.A. § 1715z-20....................................................................................................................... 5

15 U.S.C.A. § 1715z-20(a) ................................................................................................................. 5

28 U.S.C. §§ 2201 ........................................................................................................................... 15

5 U.S.C.A. § 706(2)(A)........................................................................................................................ 12

## <u>MEMORANDUM OF POINTS AND AUTHORITES</u>

## 1.    INTRODUCTION

Plaintiff has filed a lawsuit against the Department of Housing and Urban Development ("HUD") and RMS because he was denied a reverse mortgage.  Plaintiff does not contend (nor do his authorities support the argument) that RMS was required to grant him a reverse mortgage.  He simply brings this suit for declaratory judgment that his interpretation of the HUD regulations is superior to that of RMS.

Plaintiff cannot establish federal jurisdiction, however, because the statutes and regulations he bases his "federal question" on do not grant a private right of action. Furthermore, Plaintiff cannot meet the requirements of diversity jurisdiction, because his basis for pleading the "amount in controversy" is based on speculative hypothetical theories. Additionally, despite basing his entire complaint on interpretations of administrative regulations, Plaintiff failed to exhaust the necessary administrative remedies before hauling HUD and RMS into federal court.

Plaintiff fails to establish he has standing to bring this suit under Article III, as he cannot prove that he suffered an "injury in fact" that is "concrete and particularized," or "actual or imminent," as Plaintiff's claimed injuries are both "conjectural" and "hypothetical."  Moreover, Plaintiff fails to demonstrate how a declaratory judgment would redress Plaintiff's claimed injuries, as RMS has no obligation to grant him a reverse mortgage.

Finally, Plaintiff's sole cause of action for declaratory judgment fails to state a claim upon which relief can be granted.  As Plaintiff does not state an underlying claim for relief, he is precluded from asserting a sole cause of action for declaratory judgment.  Furthermore, Plaintiff cannot prove a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, as Plaintiff's claimed injury is nothing more than speculation.

As there is no likelihood that allowing Plaintiff leave to amend the Complaint would cure his numerous Constitutional and statutory shortcomings, the Court should dismiss Plaintiff's Complaint *with* prejudice.

/ / /

/ / /

## **ARGUMENT**

This motion should be granted with prejudice, as Plaintiff cannot establish subject matter jurisdiction and fails to state a claim for relief.

**1.      STANDARD OF REVIEW ON MOTION TO DISMISS**

**A.      FRCP Rule 12(b)(1)**

Where subject matter jurisdiction is lacking, dismissal under Rule 12(b)(1) is appropriate. *MacKay v. Pfiel*, 827 F.2d 540, 543 (9th Cir. 1987). Once the defendant objects to a lack of subject matter jurisdiction, plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To survive a motion to dismiss under Rule 12(b)(1), plaintiff must prove that the Court has jurisdiction to hear the case. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) ("Federal courts are of limited jurisdiction...It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests on the party asserting jurisdiction.")

**B.      FRCP Rule 12(b)(6)**

A motion to dismiss under Federal Rules of Civil Procedure, rule 12(b)(6), tests the legal sufficiency of the claims asserted.  *De La Cruz v. Tormey*,  582 F.2d 45, 48 (9th Cir. 1978); *Chavez v. I.N.S.*, 17 F.Supp.2d 1141, 1143 (S.D. Cal. 1998).  To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 US 544, 556 – 57 (2007).

To determine if a complaint is "plausible," the court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally."  *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2nd Cir. 2009).  However, courts "are not bound to accept as true a **legal conclusion** couched as a factual allegation."  *Bell Atlantic Corp. v. Twombly, supra*, 550 U.S. at 555 (*emphasis added*).  Further, the court, drawing "on its judicial experience and common sense," must decide in the specific context of the case whether the factual allegations, if assumed true, allege a plausible claim.  *Id.*

Typically, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint. *See*, *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). The Court will dismiss a claim pursuant to Rule 12(b)(6) if the complaint, when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a claim. *Conley v. Gibson*, 355 U.S. 41, 45 – 46 (1957). A dismissal may be based either: (1) a cognizable legal theory; or (2) an absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In granting a motion under Rule 12(b)(6), leave to amend should not be granted where it is clear that the complaint's deficiencies cannot be cured by amendment. *See*, *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir.1995).

## 2.   PLAINTIFF CANNOT ESTABLISH SUBJECT MATTER JURISDICTION

### A.   Federal Question Jurisdiction Does Not Apply, as Plaintiff Does Not Establish a Private Right of Action

First, Plaintiff attempts to establish federal court jurisdiction through 28 U.S.C. § 1331, because the question he presents to the Court regards HUD regulations. (Comp., ¶6.) "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir.1996.)

The United States Supreme Court has explicitly stated that "the necessary assumption that there is no federal private right of action thus cannot be overstated." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 812, (1986). The Court warned that "it would flout congressional intent to provide a private federal remedy for the violation of the federal statute." *Id*. Thus, the Court cautioned, "the 'vast majority' of cases for which original federal question jurisdiction exists 'are those in which federal law creates the cause of action'." *Id*. The Court grounded its reasoning in that of the great Justice Holmes, stating that "[a] suit arises **under the law that creates the cause of action**." (*emphasis added*) *Id*.; *citing, American Well Works Co. v. Layne & Bowler Co*., 241 U.S. 257, 260 (1916).

Indeed, the Supreme Court has stated that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. University of Chicago*, 441 U.S. 677, 688 (1979). Instead,

the Court has given guidance that "[t]he question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15 (1979). Thus, "what must ultimately be determined is whether Congress intended to create the private remedy asserted." *Id*. at 15-16.

In interpreting these decisions, circuit courts have reinforced that "[a] federal rule of decision is necessary but not sufficient for federal jurisdiction. **There must also be a right of action to enforce that rule**." (*emphasis added*) *Dillon v. Combs*, 895 F.2d 1175, 1177 (7th Cir.1990) (*citing Merrell Dow*); *cert. denied*, 498 U.S. 1023, 111 S.Ct. 670, 112 L.Ed.2d 663 (1991). Thus, a "[p]rivate federal remedy for violating federal statute is prerequisite for finding federal question jurisdiction for complaint alleging violation of federal statute as element of state cause of action." *Smith v. Industrial Valley Title Ins. Co*., 957 F.2d 90; *cert. denied*, 112 S.Ct. 3034, 505 U.S. 1221(3rd Cir. 1992). The Ninth Circuit has held that, "[i]n the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provid[s] precisely the remedies it consider[s] appropriate." *Scientex Corp. v. Kay* 689 F.2d 879, 883 (9th Cir. 1982); *citing, Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14-15 (1981).

Here, none of the statutes and administrative regulations cited by Plaintiff contain a "strong indicia" of "congressional intent" to provide Plaintiff with a private cause of action.

    1.)    <u>24 C.F.R §§ 206.33 to 206.41 Do Not Give Private Causes of Action</u>

In support of his DJA claim, Plaintiff cites 24 C.F.R §§ 206.33 to 206.41. (Comp., ¶24.) These administrative regulations do not give a plaintiff a private right to a cause of action, but merely list the various conditions under which a person "is eligible to apply for insurance." (24 C.F.R. §§ 206.9.) As there is no indication that this regulation gives rise to a private cause of action, this regulation does not give Plaintiff a basis for a federal question suit. (*TAMA*, *supra*, 444 U.S. at 15-16.)

    2.)    <u>12 U.S.C.A. § 1715z-20 Merely Authorizes the Secretary of HUD to</u>
            <u>Create a Mortgage Insurance Program</u>

Plaintiff next cites 15 U.S.C.A. § 1715z-20 to argue that he "is an intended beneficiary

of the GECM program." (Comp., ¶24.) This statute is nothing more than an act of Congress which "authorize[s] the [HUD] Secretary to carry out a program of mortgage insurance." (15 U.S.C.A. § 1715z-20(a).) As Plaintiff is not the Secretary of HUD, this statute does not give him any rights or authority. (Comp., ¶12; 15 U.S.C.A. § 1715z-20.)

Furthermore, while Plaintiff argues that this statute proves that he is eligible for a HUD insured loan, he fails to mention that the language in the statute is **permissible**, not mandatory: Congress merely states that "[t]he Secretary *may*, upon application by a mortgagee, insure any home equity conversion mortgage eligible for insurance under this section." (*emphasis added*) (15 U.S.C.A. § 1715z-20(c).) Thus, this statute cannot be relied upon by Plaintiff to assert an underlying claim, as the actual language of the statute is merely permissive, and does not give rise to a cause of action. (*TAMA*, *supra*, 444 U.S. at 15-16.)

### 3.) Plaintiff Does Not Plead Discrimination Under 15 U.S.C. § 1691

Plaintiff next cites 15 U.S.C. § 1691(a) to state that "[t]he Equal Credit Opportunity Act also prohibits creditors from discriminating against any applicant , with respect to any aspect of a credit transaction 'on the basis of race, color, religion, national origin, sex or marital status, or age' among other things." (Comp., ¶27.) This citation appears to be entirely disconnected from the rest of his Complaint. Plaintiff does not allege that he was discriminated upon by any of these factors—instead he claims that he was denied "because plaintiff as trustee lacked a beneficial interest in the real property security." (Comp., ¶28.) Thus, Plaintiff cannot rely upon 15 U.S.C. § 1691 to state an underlying claim.

### 4.) The HUD Handbook Does Not Give an Underlying Cause of Action

Plaintiff next apparently cites the Department of Housing and Urban Development Handbook to argue that "RMS dba Security One Lending unlawfully denied plaintiff processing of his application and underwriting consideration, wrongfully claiming he was ineligible." (Comp., ¶29.) To support his claim that RMS acted "unlawfully," Plaintiff cites "HUD 4155.1, at § 4-A-1-a, b, c, & d."

Not only is the "HUD Handbook" not authoritative, the sections cited by Plaintiff do not state anywhere that denying a person for any reason is "unlawful." (HUD 4155.1, at § 4-A-1-a, b, c, & d.) Instead, this informational handbook merely states its purpose is that it:

"contains information on borrower, coborrower, and cosigner eligibility requirements, including: who is eligible for FHA mortgage insurance, borrower age limits, determination of creditworthiness, borrower and coborrower requirements, cosigner requirements, additional coborrower and cosigner requirements, military personnel eligibility, veteran eligibility documentation requirements, title issues regarding non-borrowing spouses or other parties in interest, and a definition of minimum decision credit score." (*Id.*)

Plaintiff's assertion that RMS "unlawfully denied plaintiff processing of his application" is nothing more than a hollow legal conclusion without any authority—thus, it should be disregarded. *Twombly, supra*, 550 U.S. at 555.

As none of the authority cited by Plaintiff in his Complaint appears to give rise to a private cause of action, he cannot establish federal question jurisdiction. *TAMA, supra*, 444 U.S. at 15-16; *Scientex Corp., supra*, 689 F.2d at 883.

## B.   Plaintiff Cannot Prove the Amount in Controversy is Sufficient to Establish Diversity Jurisdiction

### 1.)   Plaintiff's Amount in Controversy is Based Entirely on a Speculative Theory

Under 28 U.S.C. section 1332, subs. (a), the amount in controversy in a federal case must be $75,000.  While at one time it was the burden of the party resisting jurisdiction to show the insufficiency of amount in controversy, today the party wishing to exercise federal jurisdiction must carry the burden of showing amount in controversy. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 181-190 (2000).

The Ninth Circuit has thus held that "[i]n the face of an appropriate objection on the part of defendant, the showing as to 'amount in controversy' cannot be supplied by an allegation in the complaint that the general subject of the Litigation is of a value equal to the required minimum." *Ridder Bros., Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944).  Instead, the "pleading and the evidence introduced upon the hearing of the motion to dismiss an action seeking equitable relief must show such required amount to be of the value of the particular and limited thing sought to be accomplished by the action." *Id*.  As with most (if not all) district courts, the Northern District of California has held that a "speculative argument regarding the potential value of the award is insufficient" to establish amount in controversy.  *Conrad*

*Associates v. Hartford Acc. & Indem. Co*. (N.D. Cal. 1998) 994 F.Supp. 1196, 1198; *citing, Gaus v. Miles*, 980 F.2d 564, 567 (9th Cir.1992).

Here, Plaintiff bases his entire "amount in controversy" on a speculative argument that *if* Defendant RMS had read the HUD regulations in the manner in which Plaintiff apparently reads them, he would have been eligible for a reverse mortgage insured by HUD.  (Comp., ¶10.)  His argument then concludes that *had* RMS interpreted the HUD regulations in his favor, he *probably* would have been granted a reverse mortgage from RMS.  (Comp., ¶10.)  Plaintiff then claims that this approval would have resulted in the "funding of a HUD insured reverse mortgage or HECM loan in the approximate amount of $460,000."  (Comp., ¶10.)  Therefore, if (*and only if*) the first three conditions were to occur, Plaintiff the amount in controversy would exceed $460,000.  (Comp., ¶10.)

Plaintiff's argument is nothing more than speculation piled on speculation.  Plaintiff does not even allege that RMS is obligated to approve him of a loan, **even if the Court issues a declaration** he seeks.  (*See*, Comp., ¶18.)  In fact, Plaintiff pleads that "private defendants […] **require fulfillment of preconditions prior to underwriting consideration**." (*emphasis added*) (Comp., ¶18.)  Therefore, he admits that there are other preconditions that RMS considers prior to issuing a reverse mortgage.  (Comp., ¶18.)  He simply speculates that if the Court were to grant his wish, RMS "would undoubtedly process plaintiff's reverse loan mortgage application if HUD so suggested."  (Comp., ¶18.)  Then, **"insofar as** [RMS] **would not maintain the right** to impose **extra regulatory underwriting considerations *or* refuse to process plaintiff's application** for a reverse mortgage loan," Plaintiff believes he would receive his desired loan.  (*emphasis added*) (Comp., ¶18)  Thus, Plaintiff admits that if RMS denies his reverse loan application for any other reason (*e.g.* to avoid the high likelihood of future lawsuits from a highly litigious applicant[1]), Plaintiff is not entitled to any damages from RMS.  (Comp., ¶18.)  If Plaintiff succeeds, he admits that the **sole result** will be that the Court "would remove speculation as to the private defendants and independent actions."  (Comp.,

---

[1] According to the Ninth Circuit Court of Appeals, Plaintiff has been previously been "sanctioned for such reasons as vexatious litigation, filing of frivolous actions and appeals, and the use of delay tactics" in an "amount totaling approximately $100,000."  *See*, *Canatella v. State of California*, 304 F.3d 843, 847 (9th Cir. 2001).

¶18.)  In summary, Plaintiff admits that even if he wins, there is no certainty that any different result will occur—Plaintiff merely wants to "remove speculation" to clarify that he is correct.

Even reading Plaintiff's Complaint in the light most favorable to his view, his amount in controversy claim is *at best* "speculative argument regarding the potential value of the award." (*Conrad* , *supra*, 994 F.Supp. at 1198.)  Taking all of Plaintiff's various pled admissions as fact, however, the Court should find that there is no amount in controversy in this case.  Based upon either reading, however, the Court should dismiss Plaintiff's "speculative argument regarding the potential value of the award" as "insufficient" to establish the amount in controversy.  *Conrad Assoc. v. Hartford Acc. & Indem. Co*. (N.D. Cal. 1998) 994 F.Supp. 1196, 1198.

        2.)    Plaintiff's Calculation of the 'Amount in Controversy' is Beyond Expectation of Recovery

Even if, *arguendo*, the Court accepts each of the speculative theories upon which Plaintiff arrives at his amount in controversy, Plaintiff's calculation entirely leaves out an important factor which greatly diminishes this amount.

The Supreme Court has long held that while it generally will accept a Plaintiff's statement of amount in controversy, "if the court f[inds] as a fact that the damages were laid in the declaration colorably and beyond a reasonable expectation of recovery, for the purpose of creating jurisdiction, there would be authority for dismissing the case."  *Smithers v. Smith*, 204 U.S. 632, 643 (1907).  Over a half century later, the Ninth Circuit reached the same conclusion in *Yoder v. Assiniboine and Sioux Tribes of Fort Peck Indian Reserv., Mont*. (9th Cir. 1964) 339 F.2d 360, 364.  There, while the plaintiffs claimed that the jurisdictional amount exceeded the minimum requirement because they argued that a federal regulation would adversely affect their land rights.  *Id.* at 362.  The Ninth Circuit held that despite pleading the requisite amount in controversy, the lower court should have dismissed the case for lack of jurisdiction, as this calculation was not accurate.  *Id*. at 364.  The Ninth Circuit best summed up this principle by stating: "the value of the 'matter in controversy' must be measured not by the importance of principle involved, but by its **monetary consequences** to the parties to the litigation."  *Id*.

While Plaintiff fails to give any basis for his "amount in controversy" claim (other than

the statement that "the amount a 62-year old can borrow is determined pursuant to a complex formula involving the zip code of the property's location, the borrower's actual age, [and] the interest rate…"), Plaintiff claims the amount is over $75,000 because he believes he would be eligible for a loan in the amount of $460,000.  (Comp., ¶10.)

Although unclear, Plaintiff appears to argue that his entire anticipated principal loan disbursement amount as "damages." (Comp., ¶10.)  If this is the case, Plaintiff's calculated "amount in controversy" is based on the assumption that a reverse mortgage will have no depreciative effect on the value of any of his assets—it will simply be realized income.  Even if Plaintiff views the reverse mortgage solely as income, however, he is also suing as the "Trustee of the Canatella Family Trust."  (Comp., ¶12.)  While it is indisputable that if Plaintiff were to obtain a reverse mortgage, he would gain a payment now, Plaintiff fails to offset this amount with the added encumbrance on the subject property that a reverse mortgage inevitably brings.  (*See*, *Bennett*, *supra*, 703 F.3d at 584-85.)  Such an encumbrance would diminish the assets of the Trust.  Thus, Plaintiff's calculation only takes positive factors into account, while entirely ignoring any diminishment in asset value the trust would suffer.

As Plaintiff's 'amount in controversy' argument is made "colorably and beyond a reasonable expectation of recovery, for the purpose of creating jurisdiction," the Court should dismiss the Complaint for lack of jurisdiction.  *Smithers*, 204 U.S. at 643.

## 3.   PLAINTIFF HAS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES PRIOR TO FILING THIS SUIT

Despite his reliance on administrative regulations and his bringing suit against a federal agency for incorrectly interpreting a federal statute, Plaintiff at no time alleges he exhausted any requisite administrative remedies.

### A.   Plaintiff Has Not Taken Any Requisite Steps to Exhaust Administrative Remedies

The vast majority of Plaintiff's Complaint is based upon HUD administrative regulations.  Indeed, Plaintiff states that his Complaint belongs in federal court because "private defendants are misapplying HUD regulations […] and HUD Handbook." (Comp., ¶6.)  In fact, Plaintiff summarizes the entire basis for this suit as "the resolution of a substantial question of

federal law: whether plaintiff […] is eligible for a HUD insured reverse mortgage or HECM loan under applicable HUD regulations?" (Comp., ¶7.)  Plaintiff, however, fails to plead that he has exhausted any administrative remedies whatsoever.

The Supreme Court has consistently held that "[t]he doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." *McKart v. United States*, 395 U.S. 185, 193 (1969).  "The doctrine provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.' " *Id.*; *quoting*, *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938).  Exhaustion of administrative remedies serves two main purposes:

(1) First, exhaustion protects "administrative agency authority." *Id.*  Exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers **before it is hauled into federal court**," and it discourages "disregard of [the agency's] procedures." (*emphasis added*) *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992);

(2) Second, exhaustion "promotes efficiency." *Id.*  Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.  *Woodford v. Ngo,* 548 U.S. 81, 89 (2006).  In "some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court." *See*, *McCarthy*, *supra*, 503 U.S. at 145; *Parisi v. Davidson*, 405 U.S. 34, 37 (1972); *McKart, supra*, at 195.  "And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *McCarthy*, *supra*, 503 U.S. at 145.

Here, despite basing his entire suit off on HUD's administrative regulations, Plaintiff fails to plead that he exhausted any administrative remedies whatsoever.  (Comp., 1—41.) Plaintiff states that "private defendants are heavily regulated by HUD and would decline from imposing extra regulatory conditions on plaintiff and would undoubtedly process plaintiff's reverse mortgage loan application if HUD so suggested," but does not allege that any such request for a "suggestion" was made.  (Comp., ¶18.)  Plaintiff does not plead that he went so far as writing a letter to HUD prior to filing this suit, simply skipping the administrative procedures entirely "to bring suit against HUD," notwithstanding his admission that "HUD has

additional statutory means to provide complete relief to both plaintiff and defendants." (Comp., ¶18.)

Despite Plaintiff's desire to skip this required step, Plaintiff must first address his concerns to HUD, rather than rushing to federal court.   The reasoning for this requirement was described by Justice Alito in *Woodford* as such:

> "Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims.  Administrative law does this by requiring proper exhaustion of administrative remedies, **which "means using all steps that the agency holds out, and doing so properly** (so that the agency addresses the issues on the merits)." (*emphasis added*) *Woodford, supra*, 548 U.S. at 90; *citing*, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (2002).

This is because, "as a general rule [...] courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.* (1952) 344 U.S. 33, 37.

While Plaintiff requests this Court find "that HUD cannot justify an interpretation of its regulations that operate to render ineligible otherwise qualified applicants for reverse mortgage or HECM loans," Plaintiff must first turn to HUD to "justify [such] an interpretation," "give the agency a fair and full opportunity to adjudicate [his] claims," and ***only then*** get "hauled into federal court." *Woodford*, *supra*, 548 U.S at 90; *McCarthy*, *supra*, 503 U.S. at 145.  As Plaintiff has failed to do so, the Court should dismiss this case.  *Id*.

**B.      Plaintiff Cannot Rely Upon the Administrative Procedure Act**

Plaintiff will undoubtedly argue that the Administrative Procedure Act ("APA") renders exhaustion of administrative remedies unnecessary.  Plaintiff cites this statute in the Complaint to state that it allows a court to "set aside an unlawful agency action."  (Comp., ¶22.)  Plaintiff, however, also admits that "it is the prerogative of the agency to decide in the first instance how best to provide relief."  (Comp., ¶22), *citing*, *Northern Air Cargo v. U.S. Postal Serv.* 674 F.3d 852, 861 (D.C. Cir. 2012).

The APA allows a court to "compel agency action unlawfully withheld or unreasonably delayed." (5 U.S.C. § 706(1).)  A claim to compel action may proceed under the APA "only

where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." (*emphasis in original*) *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004); *see also*, *Hells Canyon Preservation Council v. U.S. Forest Serv*. 593 F.3d 923, 932 (9th Cir. 2010).

Here, Plaintiff fails to plead that an ***agency*** has taken an "arbitrary" or "capricious" finding at any point in his Complaint. (Comp., ¶1—41.)  Plaintiff's allegations are ***not*** that HUD has taken an "agency action" that was "arbitrary" or "capricious," (as described in APA)[2], his claims are entirely focused on "'private defendants' [interpretation] that HUD regulations render plaintiff and the real property security ineligible for a reverse mortgage." (Comp., ¶33.) Plaintiff neglects to "assert that [HUD] failed to take a *discrete* agency action that it is *required to take*." *Norton*, *supra*, 542 U.S. at 64.  It does not appear from the Complaint that Plaintiff even contacted HUD prior to filing this suit.  Plaintiff does not cite any authority which supports the contention that HUD is/was required to take a "*discrete* agency action" without any notice. (Comp., ¶6, 18.)  Instead, Plaintiff bases his claim on the argument that "the HUD Secretary acted contrary to law by failing to ensure compliance with HUD eligibility requirements." (Comp., ¶18.)  This is akin to a person suing the Department of Education because they believe their teacher was not properly assessing their grades.

As Plaintiff fails to demonstrate that "arbitrary" or "capricious" actions were taken by an **agency**, he cannot rely upon the APA to save the fact that he failed to exhaust administrative remedies prior to bringing this suit.  (5 U.S.C.A. § 706(2)(A).)

## 4.    PLAINTIFF DOES NOT HAVE STANDING TO BRING THIS SUIT

The United States Supreme Court has held that there are three elements needed to "establish […] the irreducible constitutional minimum of standing," under Article III of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  First, the

---

[2] The APA provides in relevant part: "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall:

 (2) hold unlawful and set aside **agency action**, findings, and conclusions found to be—

    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." (*emphasis added*) (5 U.S.C.A. § 706(2)(A).)

plaintiff must have "suffered an 'injury in fact'—an invasion of a legally protected interest which is: (a) concrete and particularized [citations], and (b) 'actual or imminent, not conjectural or hypothetical." *Id*. Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant'." *Id*. Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by favorable decision'." *Id*. at 561.

### A. Plaintiff Cannot Establish "Injury in Fact"

Here, Plaintiff cannot show that he has "suffered an injury in fact." As discussed above, Plaintiff cannot show that Defendant RMS has "inva[ded] a legally protected interest," as he cites no authority that Defendant RMS was **required** to grant his loan application. *Id*. at 560. In fact, Plaintiff admits that "private defendants [RMS] […] require fulfillment of preconditions prior to underwriting consideration." (Comp., ¶18.) Thus, even under Plaintiff's interpretation of the statutes and regulations he cites, RMS had the authority to "require fulfillment" of other "preconditions prior to underwriting consideration." (Comp., ¶18.)

As Defendant admits that RMS acted within its rights, Plaintiff cannot show he has "suffered" an "invasion of a legally protected interest," and cannot establish standing under Article III of the United States Constitution. *Lujan*, *supra*, 504 U.S. at 560.

### B. Plaintiff's Injury is Purely Hypothetical in Nature and Not Redressible by a Favorable Decision

Plaintiff's claim that he was injured is based on his denial of obtaining a loan. Because it is impossible for Plaintiff to show that he necessarily would have been granted a reverse mortgage from RMS, this claimed injury is entirely hypothetical. Furthermore, because reverse mortgages constitute exchanges of consideration, it is not an injury that is "concrete" or "immediate" in nature.

#### 1.) Plaintiff Cannot Prove He Would Have Obtained a Reverse Mortgage from RMS with Different Analysis

Here, Plaintiff virtually admits in his pleading that he has not suffered an injury that is "concrete and particularized"—stating that "***if Plaintiff qualified for a reverse mortgage*** or HECM loan, he would be able to finance law office expenses and invest in the office to

increase profitability and earn income." (Comp., ¶13.) Plaintiff states he "has suffered an injury in fact" in one sentence and in the same paragraph then essentially states that the basis for this injury is entirely based on a hypothetical "if [he] qualified for a reverse mortgage." (Comp., ¶13.) As this is both "conjectural" and "hypothetical," Plaintiff cannot establish he has suffered injury. (*Lujan*, *supra*, 504 U.S. at 560.)

Plaintiff claims his injury stems from the idea that he did not obtain a "loan in the approximate amount of $460,000." (Comp., ¶10.) Accordingly, Plaintiff basis his "injury in fact" claim on the decision of a private corporation (RMS) to deny his reverse mortgage loan. *Id*. In support, Plaintiff assumes that "it would clearly be in [RMS'] 'pecuniary interest' to originate a reverse mortgage loan to plaintiff." (Comp., ¶22.) Despite this contention, earlier in his Complaint Plaintiff admits that reverse mortgage eligibility is "determined pursuant to a **complex formula** involving the zip code of the property's location, the borrower's actual age, the interest rate, and the borrower's. (*sic*)" (Comp., ¶10.) Thus, Plaintiff argues he would have automatically qualified, but also would have been subject to a "complex formula" to determine his eligibility. *Id*. Plaintiff provides no legal support for these contentions, and his legal conclusion appears to have been entirely speculative in nature. Consequently, this conclusion may be disregarded by the Court. *Twombly, supra*, 550 U.S. at 555. Since, Plaintiff's entire basis for "injury" is the hypothetical, it fails as a matter of law. *Lujan*, *supra*, 504 U.S. at 560.

2.) <u>Denial of a Reverse Mortgage is Not an Injury that is "Concrete" and/or "Immediate" in Nature</u>

While Plaintiff is correct that RMS "deliver[s] exceptional reverse mortgage servicing and provide[s] client specific mortgage solutions" (Comp., ¶12), it is indisputable that reverse mortgages are a bargained transaction in which one party exchanges consideration for another party's consideration. As Plaintiff rightly points out in his Complaint, in a reverse mortgage transaction a borrower reduces the equity in their property in exchange for financial disbursements. *See also*, *Bennet v. Donovan*, 703 F.3d 582, 584-85 (D.C.Cir.2013). As with any financial transaction, there is some risk is involved--in some cases, such a transaction may

not be entirely beneficial to the borrower.[3] Therefore, Plaintiff's contention that an investment would have been in his best interests in the first place is purely "hypothetical", and does not constitute a "concrete" and/or "particularized" injury that is "actual or imminent."

### C.    Plaintiff Admits His Injury is Not Redressable

The Supreme Court has also held that to establish standing, it must be "likely," as opposed to merely "speculative," that the injury to a plaintiff will be "redressed by a favorable decision." *Lujan*, *supra*, 504 U.S. at 561.  Here, Plaintiff admits that "private defendants [RMS] […] require fulfillment of preconditions prior to underwriting consideration."  (Comp., ¶18.)  As such, even should the Court grant the declaration Plaintiff's seeks, Plaintiff has admitted that his assertions that his "injury can be redressed by a favorable decision" are based upon his own speculation that RMS actually grant him a reverse mortgage (should he prevail). (Comp., ¶18.)  As it is purely "speculative" that Plaintiff's claimed injury will be "redressed by a favorable decision," he cannot establish Article III standing. *Lujan*, *supra*, 504 U.S. at 561.

### 5.    PLAINTIFF CANNOT ASSERT A CLAIM UNDER THE DECLARATORY JUDGMENT ACT

Plaintiff's entire Complaint is based on his sole cause of action under the Declaratory Judgment Act ("DJA").  Courts have consistently held that there must exist an underlying cause of action to sustain a claim under this statute.

### A.    Plaintiff's DJA Claim Fails, as he has No Underlying Claim for Relief

The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

> "In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  28 U.S.C. § 2201(a).

The Supreme Court has held that the DJA's operation "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937).  Federal courts consistently have

---

[3] *See*, Federal Deposit Insurance Corporation, *Reverse Mortgages: What Consumers and Lenders Should Know* (Jan. 13, 2009) *accessible at*: http://www.fdic.gov/regulations/examinations/supervisory/insights/siwin08/reverse_mortgages.html

held that "a declaratory judgment is not a theory of recovery." *Team Enterprises, LLC v. Western Inv. Real Estate Trust*, 721 F.Supp.2d 898, 911 (E.D. Cal. 2010); *aff'd*, (9th Cir. 2011) 446 Fed.Appx. 23.  Thus, "[t]he DJA merely offers an additional remedy to litigants" whom have an underlying cause of action on which they can base their complaint.  *Team Enter.*, *supra*, 721 F.Supp.2d at 911; *citing, Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2nd Cir.1997).

California District Courts have been consistent in this position, holding that "the DJA merely offers the plaintiff **an additional remedy** where the plaintiff has stated an **underlying claim for relief**."  (*emphasis added*) *Me Lee v. LNV Corp*. (C.D. Cal., Apr. 10, 2012, 2:11-CV-8204-ODW) 2012 WL 1203403.  As one court stated, "where [...] the plaintiff has not adequately pled an underlying claim for relief, her declaratory relief claim **cannot stand alone**, and is **therefore subject to dismissal**." (*emphasis added*) *Junod v. Dream House Mortg. Co.* (C.D. Cal., Jan. 5, 2012, CV 11-7035-ODW VBKX) 2012 WL 94355; *citing*, *Team Enter.*, *supra*, 721 F.Supp.2d at 911.

Furthermore, the DJA does not authorize suits to originate for the sole purpose of deciding whether federal statutes have been or will be violated, when **no private right of action** to enforce the statutes has been created by Congress.  *Jones v. Hobbs*  745 F.Supp.2d 886 (E.D.Ark.2010), *aff'd*, 658 F.3d 842, *cert. denied*, 133 S.Ct. 97, 183.  The Ninth Circuit Court of appeals has reasoned that while the DJA "expanded the scope of the federal courts' remedial powers, it did nothing to alter the courts' jurisdiction, or the 'right of entrance to federal courts.' " *Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp*. 642 F.3d 849, 853 (9th Cir.2011).

As discussed *supra*, none of Plaintiff's various regulatory and statutory assertions in the Complaint give rise to a private cause of action.  Since Plaintiff fails to assert a single underlying "private cause of action," his request for declaratory relief under the DJA must be dismissed.  *Jones*, *supra*, 745 F.Supp.2d 886; *Countrywide*, *supra*, 642 F.3d at 853.

**B.     Plaintiff Cannot Show an 'Actual Controversy Between the Parties'**

To invoke declaratory relief, a plaintiff must show that there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to

warrant the issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  The Supreme Court has distinguished "a justiciable controversy" from a "difference or dispute of a hypothetica or abstract character; from one that is academic or moot."  *Id*.  Thus, the Court requires that:

> "The **controversy must be definite and concrete**, touching the legal relations of parties having adverse legal interests.... It must be a **real and substantial** controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon **a hypothetical state of facts**."  (*emphasis added*) (*Id*.)

The Ninth Circuit has interpreted this to mean that a litigant must "under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of **sufficient immediacy** and **reality** to warrant the issuance of a declaratory judgment." (*emphasis added*)  *Wickland Oil Terminals v. Asarco, Inc.* (9th Cir. 1986) 792 F.2d 887, 893.

Here, Plaintiff cannot show that there is a "substantial controversy" that is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id*.  While Plaintiff argues that he "has sufficiently alleged that the controversy between plaintiff and defendants involves a HUD statutory and regulatory dispute," Plaintiff fails to show how the statutes and provisions in the HUD Handbook he cites in support of his claim arise to the level of a "real and substantial controversy" with "definite and concrete" questions which "touch the legal relations of parties having adverse interests."  *Maryland Ca. Co*, *supra*, 312 U.S. at 273. Plaintiff merely pleads that he applied for a reverse mortgage and was denied for this loan because Defendant RMS did not believe the loan would be insured, and thus was too risky. (Comp., ¶1—46.)  Plaintiff does not allege that RMS was required to grant him a loan—he simply believes that RMS' interpretation of HUD regulations is "erroneous."  (Comp., ¶14.)

Thus, Plaintiff's assertion that he has sufficiently alleged a "real controversy" between RMS and Plaintiff is unsubstantiated.  Plaintiff cannot establish any "such controversy which affect his legal interests."  *Wickland*, *supra*, 792 F.2d at 893.  Therefore, he cannot establish a claim under the DJA, and the Court must dismiss his claim.  *Id*.

**6.      CONCLUSION**

As Plaintiff cannot establish the constitutional requirements of standing or federal jurisdiction, the Court should dismiss his Complaint with prejudice.  Furthermore, Plaintiff has failed to exhaust requisite administrative remedies.  Finally, Plaintiff's sole cause of action cannot stand, as he fails to state a single underlying statute or regulation which gives rise to a private cause of action.  He simply cannot demonstrate a "real and substantial controversy" upon which to base this lone cause of action.

As a result of these numerous defects, Defendant respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Complaint *with* prejudice.


DATED:  February 19, 2014                    LAW OFFICES OF LES ZIEVE


                                             By:  _/S/ TIMOTHY M. RYAN_____
                                                  TIMOTHY M. RYAN
                                                  Attorney  for Defendant
                                                  REVERSE MORTGAGE SOLUTIONS,
                                                  INC.. dba SECURITY ONE LENDING


U:\Litigation - CA\Lit Cases\Canatella\Pleadings\2014 02 12 - Mtn to Dismiss.doc

1
2
3
4
5
6
7

8              **UNITED STATES DISTRICT COURT**

9       **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

10

| | |
|---|---|
| 11 RICHARD A. CANATELLA, individually, and as TRUSTEE OF THE CANATELLA FAMILY 12 TRUST, | **CASE NO.:**  CV135937 |
| | *Assigned to Hon. Judge Charles E. Breyer* |
| 13             Plaintiff. | **[PROPOSED] ORDER** |
| 14        v. | **FRCP 12(b)(1); FRCP 12(b)(6)** |
| 15 SHAUN DONOVAN, SECRETAR UNITED STATES DEPARTMENT HUD, REVERSE 16 MORTGAGE SOLUTIONS, INC., dba SECURITY ONE LENDING | Date:          April 17, 2014 Time:          9:00 a.m. Courtroom:  F – 15th Floor |
| 17 | |
| 18             Defendant(s). | |

19
20
21

22        This Court, having read and considered the papers submitted by the parties, and

23 FINDING GOOD CAUSE, orders that the Motion to Dismiss the Complaint, filed by defendant

24 REVERSE MORTGAGE SOLUTIONS, INC., dba SECURITY ONE LENDING, is hereby

25 GRANTED without leave to amend as to plaintiff RICHARD A. CANATELLA'S Complaint

26 for Declaratory Relief.

27        This Motion is GRANTED under Federal Rule of Civil Procedure 12(b)(1), as the Court

28 lacks subject-matter jurisdiction.

1

This Motion is GRANTED under Federal Rule of Civil Procedure 12(b)(6), as Plaintiff has failed to state a claim upon which relief can be granted.

IT IS SO ORDERED.

Dated:_____                    _____
                                                Hon. CHARLES E. BREYER
                                                U.S. District Court Judge
                                                Northern District of California

2

## PROOF OF SERVICE

I am over the age of eighteen years and not a party to the within action.  I am employed by Law Offices of Les Zieve, whose business address is: 30 Corporate Park, Suite 450, Irvine, CA 92606.

On February 19, 2014, I served the within document(s) described as: **DEFENDANT REVERSE MORTGAGE SOLUTIONS, INC.'s, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; [PROPOSED] ORDER** on the interested parties in this action:

☒    by placing ☐ the original ☒ true copy(ies) thereof enclosed in sealed envelope(s)
☒    addressed as follows: ☐ addressed as stated on the attached mailing list.

| Name & Address | Telephone / Fax / E-mail | Role |
|---|---|---|
| Cotter & Del Carlo<br>Richard Canatella<br>4610 Mission Street, Fourth Floor<br>San Francisco, CA 94112 | Tel:  415-584-5446<br>Fax: 415-584-5447 | Plaintiff |
| David Olick<br>3450 Sacramento Street, No. 509<br>San Francisco, CA 94118 | Tel: 707-750-1005<br>Fax: 925-401-9419 | Attorney for Plaintiff Richard Canatella |

☒    **BY MAIL** (F.R.Civ.P, rule 5(b)(1); F.R.Civ.P., rule 5(b)(2)(C))—I deposited such envelope(s) for processing in the mailroom in our offices, having been address to each party's attorney(s) of record at their last known address.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California, in the ordinary course of business.

☒    **CM/ECF** (U.S. District Court, Northern District of California)—The NEF that is automatically generated by the Court's Electronic Filing System constitutes service of the filed document(s) on registered users.  All parties who are not registered, if any, were served in the manner set forth above.

☒    (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 19, 2014, at Irvine, California.

*Jody McLain*

_____
JODY MCLAIN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Proof of Service