1

2                          UNITED STATES DISTRICT COURT

3                          NORTHERN DISTRICT OF CALIFORNIA

4

5    **RICHARD A. CANATELLA**,                    Case No.  13-cv-05937-YGR

            Plaintiff,
6
                                                  **ORDER (1) GRANTING HUD'S MOTION TO
7         v.                                      DISMISS AND (2) GRANTING IN PART RMS'S
                                                  MOTION TO DISMISS WITH LEAVE TO
     **REVERSE MORTGAGE SOLUTIONS INC., ET        AMEND**
8    AL.**,
                                                  Re: Dkt. Nos. 25 & 28
9             Defendants.

10          Plaintiff Richard Canatella ("Canatella") filed his amended complaint, individually and as

11   trustee of the Canatella Family Trust, against Reverse Mortgage Solutions, Inc. ("RMS") and

12   Shaun Donovan, Secretary of the United States Department of Housing and Urban Development

13   ("HUD") on March 10, 2014, asserting counts for: (1) declaratory judgment, against both

14   defendants; (2) violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq. ("ECOA"),

15   against RMS; and (3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §

16   17200 et seq. ("UCL"), against RMS.  (Dkt. No. 22 ("AC") ¶¶ 66-91.)  These allegations stem

17   from RMS's refusal to provide plaintiff with a reverse mortgage and HUD's purportedly negligent

18   supervision of RMS.

19          Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), defendants filed separate motions to

20   dismiss plaintiff's amended complaint on the grounds that: (1) the Court lacks subject matter

21   jurisdiction; and (2) the amended complaint fails to state a claim upon which relief can be granted.

22   (Dkt. Nos. 25 ("RMS Mot."), 28 ("HUD Mot.").)  Canatella opposes both motions.  (Dkt. Nos. 27

23   ("RMS Oppo."), 31 ("HUD Oppo.").)

24          Having carefully considered the papers submitted, the amended complaint,[1] and the

25   arguments of counsel, the Court hereby **GRANTS** HUD's Motion to Dismiss and **GRANTS IN PART**

26   _____

27          [1] Plaintiff filed two requests that the Court take judicial notice of his amended complaint.
     (Dkt. Nos. 27, 32.)  Those requests are **DENIED** as unnecessary.  *See, e.g., Martinez v. Blanas*,
28   Case No. 2:06-CV-0088 FCD, 2011 WL 864956, at *1 n.1 (E.D. Cal. Mar. 10, 2011).

United States District Court
Northern District of California

RMS's Motion to Dismiss **WITH LEAVE TO AMEND** as to both defendants.

## I.    BACKGROUND

The amended complaint is not a model of clarity.  At times, it appears to be self-contradicting.  It also contains substantial legal argument, citations, and conclusions—many of which are spurious—intertwined with its factual allegations.  In light of these circumstances, the Court gleans the essential facts relative to these motions as follows.[2]

Canatella's principal residence is 357 Vincente Street, San Francisco, CA ("357 Vincente").  (AC ¶ 58.)  The property is worth approximately $1.7 million.  (*Id*. ¶ 54.)  He holds the property in fee simple as trustee of an irrevocable trust, the Richard A. Canatella Family Trust, dated June 1, 1978 (the "Trust"),[3] on behalf of its beneficiaries, Canatella's "estranged spouse" and his adult son.  (*Id*. ¶¶ 25, 55-58.)  When he placed 357 Vincente into the Trust, Canatella reserved for himself a life estate in the residence.  (*Id*. ¶ 62.)  A life estate has "questionable value . . . because it is 'subject to complete defeasance at an unknown time.'"  (*Id*. ¶ 62.)

This suit arises from plaintiff's unsuccessful attempt to secure a reverse mortgage on 357 Vincente.  A reverse mortgage provides a lump sum or periodic payments to a homeowner from a lender.  (*Id*. ¶ 51.)  In exchange, the lender is able to receive back the amount paid plus interest, often not until some triggering event (e.g., the death of the borrower).  (*Id*. ¶ 51.)  The loan is secured by a particular property.  (*Id*. ¶ 52.)  Because reverse mortgages are often not repaid until the death of the borrower, a lender's sole recourse may be to sell the property at that time.  (*Id*.)  Such loans can present substantial risks to lenders.  For instance, if a homeowner lives longer than anticipated, accruing significant interest on the loan that far outpaces the appreciation of the property, the lender will be limited in its recovery.  (*Id*.)  Therefore, lenders may take advantage of

---

[2] The factual allegations in the amended complaint are accepted as true for purposes of considering this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In a facial attack [on subject matter jurisdiction], the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.").

[3] Plaintiff did not file a copy of the Trust paperwork along with his amended complaint, but cites certain portions thereof and reaches legal conclusions about the nature of the Trust.

United States District Court
Northern District of California

1   the HUD-insured Home Equity Conversion Mortgage ("HECM") program.  (*Id.*)  If a loan

2   qualifies under the program, then HUD provides mortgage insurance to the lender to guard against

3   possible loss.  (*Id.*)

4        In or around August 2013, after seeing an online advertisement,[4] Canatella approached

5   RMS seeking a reverse mortgage on 357 Vincente.  (*Id.* ¶¶ 1, 50.)  Plaintiff contacted Homa

6   Rassouli, an RMS reverse mortgage specialist, and thereafter provided RMS with some of his

7   personal and financial information.  (*Id.* ¶ 53.)  At Rassouli's insistence, plaintiff and his

8   "estranged spouse" met with a HUD counselor.  (*Id.* ¶¶ 25 & n.20, 53.)  Rassouli then referred

9   plaintiff to Therese Burgueno, an RMS reverse mortgage consultant.  (*Id.* ¶ 53.)  At her request, he

10   turned over copies of the Trust paperwork and the deed to the property in question.  (*Id.*)

11        Plaintiff indicated that he sought the loan in his own name, with no co-borrowers.  (*Id.* ¶

12   55.)  Plaintiff has not alleged that he sought the loan on behalf of the trust, but rather he sought a

13   lump sum payment of approximately $460,000 for his personal use.  (*Id.* ¶¶ 34-35, 37-38, 74, 80,

14   91 ("If plaintiff is unable to raise funds through a HECM loan to either finance his own retirement

15   or continue to maintain and operate his law office to earn a living, plaintiff will be forced to sell

16   the property thereby rendering himself homeless.  Under the instant trust all proceeds of sale

17   would go to the beneficiaries with nothing left for plaintiff to relocate or even purchase another

18   property!").)  Thus, he apparently sought to extract equity from 347 Vincente by obtaining a loan

19   for a substantial sum secured by the property that is held in trust for the benefit of others, and in

20   which he personally retains only a life estate.

21        After forwarding plaintiff's loan request to legal counsel, Burgueno informed plaintiff that

22   RMS would not process his application for a reverse mortgage.  (*Id.* ¶ 50.)  Burgueno stated that

23   plaintiff was ineligible for a HECM loan because title was held in irrevocable trust and plaintiff, as

24   trustee, lacked a beneficial interest in the property.  (*Id.* ¶ 57.)

25        Plaintiff filed the instant lawsuit on December 23, 2013.  (Dkt. No. 1.)  After defendants

26

27               [4] Plaintiff alleges consumer fraud by RMS via false advertisement regarding the ease of

28   qualifying for HECM loans.  (AC ¶ 21.)

United States District Court
Northern District of California

United States District Court
Northern District of California

filed initial motions to dismiss, plaintiff rendered them moot by filing his amended complaint. Plaintiff claims he was eligible for a HECM loan and that RMS's refusal to consider his application was the result of age discrimination. (AC ¶ 16, 19-21, 82.) He also claims HUD is negligently supervising RMS by allowing it to impose its own pre-conditions before issuing HECM loans that he asserts are inconsistent with HUD's regulatory framework. (*Id.* ¶ 4, 9, 16, 39, 74.) For instance, "RMS would require plaintiff to convey the property to a revocable (as opposed to an irrevocable trust) though an irrevocable trust is the cornerstone of plaintiff's estate plan primarily for the tax benefits such a plan provides." (*Id.* ¶ 9) In response to these allegations, defendants moved to dismiss on numerous grounds. The Court begins with the Rule 12(b)(1) motion.

## II.    RULE 12(b)(1)

A motion under Rule 12(b)(1) challenges the grounds for the Court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Plaintiff invoked this Court's jurisdiction and consequently bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376–78 (1994). Because jurisdiction is a threshold question, the Court will address this issue first. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 102 (1998).

Both defendants challenge plaintiff's standing to bring this action and move to dismiss pursuant to Fed. R. Civ. P. (12)(b)(1), arguing plaintiff lacks standing to bring this case because he has suffered no redressable injury as a result of their conduct. HUD also asserts sovereign immunity. The Court will address each argument in turn.

### A.    Standing

As a threshold inquiry to the adjudication of any lawsuit, a plaintiff must establish standing under Article III of the U.S. Constitution so that the Court has subject matter jurisdiction. To establish Article III standing, a plaintiff must satisfy three elements: (1) "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) causation—"there must be a causal connection between the injury and the conduct complained of"; and (3) redressability—"it must be likely, as

4

1   opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v.*

2   *Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks, citations, and

3   footnote omitted).  "At the pleading stage, general factual allegations of injury resulting from the

4   defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations

5   embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. 561.  As to

6   each claim, defendants argue plaintiff has failed to satisfy all three necessary prongs to establish

7   standing: injury in fact, causation, and redressability.

8       Plaintiff alleges RMS is guilty of false advertising and certain statutory procedural

9   violations in connection with his UCL claim.  He also alleges he was wrongfully denied a

10  mortgage as a result of age discrimination by RMS.  Wrongful denial of a mortgage application is

11  a cognizable injury in fact.  The questions remain whether such injury was caused by, or is

12  redressable by, either defendant.

13          **i.    Standing as to HUD**

14      Plaintiff asserts only Count I (for declaratory judgment) against HUD.  The Court finds

15  that plaintiff's purported injury could not have been caused by,[5] and is not redressable by, HUD.

16  The Court understands this count to seek declaratory judgment according to the theory that HUD

17  negligently supervised RMS, thereby failing to protect plaintiff from a purportedly unlawful denial

18  of his loan application, and to request as relief an order directing HUD to require RMS to issue a

19  HECM loan to plaintiff.  Plaintiff, however, does not allege that HUD had any involvement in

20  RMS's decision in regards to his specific application.  Moreover, he has failed to put forth any

21  authority demonstrating HUD has both (1) an affirmative duty to supervise lenders' decisions as to

22

23          [5] Plaintiff argues that "the causation issue is not appropriate for consideration on HUD's
24  motion to dismiss" (HUD Oppo. at 7), but the case he cites in support of that proposition merely
    holds that "*conflicting* arguments regarding causation could not be decided [upon a] motion to
25  dismiss."  *See Smith v. United Residential Servs. & Real Estate, Inc.*, 837 F. Supp. 2d 818, 825
    (N.D. Ill. 2011) (emphasis added).  Here, HUD does not put forth a conflicting argument
26  regarding causation.  Instead, HUD argues that even accepting as true plaintiff's factual
    allegations, he has failed as a matter of law to establish a causal connection between HUD's
27  conduct and plaintiff's purported injury.  The Court agrees.  *See Pritikin v. Dep't of Energy*, 254
    F.3d 791, 801 (9th Cir. 2001) (affirming dismissal where plaintiff "has not shown that her injury
28  was 'fairly traceable' to [defendant's] actions or that the relief she seeks will remedy that injury").

United States District Court
Northern District of California

1   specific HECM loan applications and (2) the ability to order RMS to offer a reverse mortgage to

2   plaintiff.  HUD presents authority that suggests it has no such supervisory right or obligation

3   under any of the statutory regimes raised by plaintiff.  *See, e.g.*, 15 U.S.C. § 1691c (regarding the

4   ECOA); *Marinoff v. U.S. Dep't of Housing & Urban Dev.*, 892 F. Supp. 493, 496 (S.D.N.Y. 1995)

5   (regarding the Fair Housing Act).  Because the only claim alleged against HUD is one for

6   declaratory relief, essentially requiring HUD to force RMS to issue a mortgage to plaintiff, and

7   plaintiff has not demonstrated that HUD has that authority, plaintiff has no standing to assert his

8   claims against HUD based on the allegations in the operative complaint.

9           Even if plaintiff did have standing to assert his claims against HUD, the Court would

10  decline to exercise its jurisdiction under the Declaratory Judgment Act as HUD has not yet taken

11  any direct action in connection with plaintiff.  The Declaratory Judgment Act, 28 U.S.C. §

12  2201(a), provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the

13  United States . . . may declare the rights and other legal relations of any interested party seeking

14  such declaration, whether or not further relief is or could be sought."  Because the exercise of

15  jurisdiction under the Act is not compulsory, even when a district court clearly has jurisdiction

16  under the Declaratory Judgment Act, it may decline, in its discretion, to exercise that jurisdiction if

17  it determines that declaratory relief is not appropriate.  *Brillhart v. Excess Ins. Co. of Am.*, 316

18  U.S. 491, 494 (1942).  The Court finds it would be a waste of judicial resources to address the

19  question of whether HUD is obligated to insure, under the HECM program, a loan to plaintiff

20  unless and until HUD refuses to do so.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)

21  ("In the declaratory judgment context, the normal principle that federal courts should adjudicate

22  claims within their jurisdiction yields to considerations of practicality and wise judicial

23  administration.").

24          ii.      **Standing as to RMS**

25          The Court similarly finds that the plaintiff lacks standing under Count I (for declaratory

26  judgment) as to RMS.  Plaintiff filed this claim for declaratory judgment to adjudicate whether

27  RMS was required to provide him with a HECM loan and whether HUD negligently supervised

28  RMS in failing to prevent his application from being rejected.  The Court finds that plaintiff's

United States District Court
Northern District of California

theory seeking declaratory judgment, as presented in the amended complaint, appears to be based entirely upon the unsupported and apparently flawed premise that RMS is obligated to grant a reverse mortgage to any applicant who qualifies under HECM guidelines.  He has therefore failed to establish causation or redressability under Count I.  Consequently, the Court finds that plaintiff has no standing to assert Count I against either defendant.  However, plaintiff also asserts Counts II (ECOA) and III (UCL) against RMS.

As to RMS, plaintiff alleges:
> RMS is discriminating against plaintiff on the basis of age by (1) treating plaintiff less favorably than other applicants; (2) refusing to process a reverse mortgage or HECM loan application for plaintiff a qualified applicant, and (3) demanding plaintiff's fulfillment of unlawful preconditions prior to underwriting consideration (i.e., RMS would require plaintiff to convey the property to a revocable (as opposed to an irrevocable trust) [*sic*] though an irrevocable trust cannot be amended or revoked and an irrevocable trust is the cornerstone of plaintiff's estate plan primarily for the estate tax benefits such a plan provides.

(AC ¶ 16.)  Without reaching the merits of plaintiff's claim, the Court finds that plaintiff has sufficiently alleged that RMS caused the type of injury contemplated by the ECOA—e.g., denial of a mortgage based on age discrimination.  This type of injury is redressable by the lender.  Therefore, plaintiff has standing to assert Count II.  Because plaintiffs' UCL claim is premised upon the same general theory, he also has standing to assert Count III.

**B.    Sovereign Immunity**

HUD asserts sovereign immunity.  Because the Court has determined that plaintiff lacks standing to assert his claim against HUD, it is not necessary to address the issue of sovereign immunity at this time.  Nevertheless, the Court will address plaintiff's sovereign immunity waiver arguments in order to provide guidance regarding any future amendments to the complaint.

**i.    Legal Framework**

Whether the United States has waived its sovereign immunity is a question of the Court's subject matter jurisdiction.  *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  The plaintiff therefore bears the burden of establishing a waiver of sovereign immunity.  *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995).

1    Absent waiver, sovereign immunity shields the federal government and its agencies and

2    employees from suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "A waiver of the Federal

3    Government's sovereign immunity must be unequivocally expressed in statutory text." *Lane v.*

4    *Pena*, 518 U.S. 187, 192 (1996). One such statute is the Federal Tort Claims Act ("FTCA"),

5    which provides a limited waiver of the government's immunity from tort liability. *See Valdez-*

6    *Lopez v. Chertoff*, 656 F.3d 851, 855 (9th Cir. 2011) ("The FTCA 'waives the sovereign immunity

7    of the United States for actions in tort' and 'vests the federal district courts with exclusive

8    jurisdiction over suits arising from the negligence of Government employees.'"). Under the

9    FTCA, "[t]he United States shall be liable . . . relating to tort claims, in the same manner and to

10   the same extent as a private individual under like circumstances." 28 U.S.C. § 2401(b); *but see id*.

11   § 2680 (providing exceptions to liability, including where an official or agency exercises due care

12   in execution of discretionary functions). First, however, the individual must have presented his

13   claim to the appropriate administrative agency and receive a final adverse determination. *Valdez-*

14   *Lopez*, 656 F.3d at 855.

15   Another such statute, the Administrative Procedures Act ("APA") (5 U.S.C. §§ 701-706),

16   confers jurisdiction upon courts to review the claim of "[a] person suffering legal wrong because

17   of agency action, or adversely affected or aggrieved by agency action within the meaning of a

18   relevant statute." 5 U.S.C. § 702 (entitled "Right of review"). Unless a statute provides an

19   applicable private right of action, courts may only review "final agency action for which there is

20   no other adequate remedy." *Id*. § 704 (entitled "Actions reviewable"); *see Norton v. S. Utah*

21   *Wilderness Alliance*, 542 U.S. 55, 61-62 (2004).

22          **ii.    Analysis**

23   Plaintiff presents theories of sovereign immunity waiver in his complaint. (AC ¶¶ 2-14.)

24   He also puts forth waiver arguments in his opposition brief. (HUD Oppo. at 15-20.) "The

25   underlying conduct for which a waiver of sovereign immunity is sought is HUD's alleged

26   negligent supervision of RMS and its refusal to protect plaintiff from RMS's unlawful application

27   of HUD's regulatory framework." (AC ¶ 12.)

28   Plaintiff's concedes the FTCA does not apply. (AC ¶ 12.) He focuses his waiver

United States District Court
Northern District of California

8

1    arguments on (1) the APA (via a violation of the ECOA) and (2) a constitutional right of access to

2    the courts.  The Court will address both arguments in turn.

3            First, plaintiff does not allege that he petitioned HUD for any relief prior to filing this

4    lawsuit, or that HUD took any direct action—let alone "final agency action"—in connection with

5    his mortgage application.  Plaintiff appears to concede that there is no "final agency action" in this

6    case and that, therefore, his argument for waiver depends upon a right of action provided for under

7    a different statute.  (HUD Oppo. at 15-16.)  Plaintiff argues the ECOA provides a private right of

8    action against HUD sufficient to establish waiver of sovereign immunity under the APA.  While

9    the United States may be deemed a "creditor" under the ECOA, the facts at issue here do not

10   allege HUD was acting in that manner or directly discriminating against plaintiff.  All of

11   plaintiff's allegations of direct discrimination or other substantive violations of the ECOA are

12   targeted solely at RMS.  Plaintiff's only theory of liability as to HUD is that the agency

13   negligently supervised RMS.  There is no cause of action for negligent supervision by HUD

14   provided for under the ECOA.  Indeed, the case plaintiff cites in support of his contention is

15   entirely inapposite; it involved purported lending discrimination by a federal agency, the Farmers

16   Home Administration.  *See Moore v. U.S. Dep't of Agric. on Behalf of Farmers Home Admin.*, 55

17   F.3d 991, 992 (5th Cir. 1995).  Therefore, plaintiff has failed to establish waiver of sovereign

18   immunity on this basis.

19           Second, plaintiff argues waiver via a constitutional right of access to the courts.  "But,

20   from time immemorial, that access has been subject to another foundational principle of our

21   judicial system, *to wit*, that '[t]he Federal Government cannot be sued without its consent.'"

22   *Petro-Hunt, L.L.C. v. United States*, 105 Fed. Cl. 37, 46 (2013) (quoting *United States v. Navajo*

23   *Nation*, 556 U.S. 287, 289 (2009)) (finding "Congress has broad discretion not only in generally

24   defining the jurisdiction of the lower federal courts, but, particularly, in deciding the conditions

25   under which the sovereign immunity of the United States will be waived").  Plaintiff also

26   acknowledges that the Supreme Court has described the right as "'ancillary to the underlying

27   claim.'"  (AC ¶ 7 (quoting *Christopher v. Harbury*, 536 U.S. 403, 403 (2002)).)  Without a valid

28   claim, "a plaintiff cannot have suffered injury by being shut out of court."  *Christopher*, 536 U.S.

United States District Court
Northern District of California

9

1    415.  As discussed above, plaintiff has asserted no valid underlying cause of action against HUD.

2    Thus, he has failed to establish sovereign immunity waiver and cannot maintain his claim against

3    HUD as presently alleged based on a constitutional right of access argument.

### III.     RULE 12(b)(6)

5          Both defendants also move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6),

6    asserting it fails to state a claim upon which relief can be granted.

7          A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

8    the complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  All allegations of

9    material fact are taken as true.  *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir.

10   2011).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter,

11   accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

12   U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

13         Pursuant to Rule 12(b)(6), a complaint may be dismissed as to a particular defendant for

14   failure to state a claim upon which relief may be granted against that defendant.  Dismissal may be

15   based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged

16   under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

17   1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984).  For

18   purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the

19   complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  *Usher*

20   *v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be

21   resolved in favor of the pleadings.  *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir. 1973).

22         However, mere conclusions couched in factual allegations are not sufficient to state a cause

23   of action.  *Papasan v. Allain*, 478 U.S. 265 (1986); *see also McGlinchy v. Shell Chem. Co.*, 845

24   F.2d 802, 810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim [for] relief

25   that is plausible on its face."  *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim

26   is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

27   reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

28   556 U.S. 662 (2009).  Thus, "for a complaint to survive a motion to dismiss, the non-conclusory

United States District Court
Northern District of California

1    'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a

2    claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.

3    2009).

4          **A.    Count I**

5          Although the Court has found that plaintiff lacks standing to assert Count I against HUD or

6    RMS, and therefore need not reach the 12(b)(6) motion as to this count, it nevertheless does so,

7    finding 12(b)(6) to be an appropriate alternative basis for dismissing Count I.

8          In Count I, plaintiff seeks declaratory judgment against RMS, asserting that he is an

9    eligible borrower under the HECM program and, therefore, that RMS's denial of his loan

10   application was improper.  (AC ¶¶ 66-74.)  He also seeks declaratory relief against HUD premised

11   upon a theory of negligent supervision by the agency.  Count I therefore appears premised on two

12   theories: (1) that RMS had an obligation to offer plaintiff a HECM loan so long as plaintiff

13   satisfied the HECM guidelines and (2) that HUD had a duty to supervise RMS in connection with

14   plaintiff's loan application.  The Court will address each in turn.

15         As to RMS, plaintiff has not put forth any authority suggesting a private lender, such as

16   RMS, has an obligation to grant a loan to every applicant who qualifies under the HECM

17   guidelines.  To the contrary, HUD guidelines appear to provide substantial discretion to lenders in

18   determining whether a particular applicant is qualified, such as HUD 4235.1, 4-5(A)(4), which

19   provides that "[t]he lender must be satisfied that the trust is valid and enforceable."

20         As to HUD, for the reasons discussed above, plaintiff has also failed to state a cognizable

21   theory for relief.  Moreover, plaintiff's conclusory statements that he was a "qualified applicant"

22   are insufficient to establish whether his application would have qualified under the HECM

23   program.  Indeed, HUD guidelines provide that all vested (as opposed to contingent) beneficiaries

24   must be eligible HECM borrowers at the time of loan origination.  HUD 4235.1, 4-5(A)(1).  Based

25   on his pleadings, plaintiff's adult son was apparently a vested beneficiary in the trust.  (AC ¶¶ 55

26   (alleging plaintiff's spouse and adult son are beneficiaries of the trust), 62 ("At the time [it was

27   established] the entire equitable estate transferred to the beneficiaries of the trust.").)  But plaintiff

28   has not alleged that his son meets the age requirements in order to qualify for the HECM program.

United States District Court
Northern District of California

11

1    (*Id.* ¶ 1 n.3 (the HECM program insures qualifying loans to borrowers over the age of 62).)

2    **B.    Count II**

3    In Count II, plaintiff alleges various violations of the ECOA.  (AC ¶¶ 24, 82.)  Specifically,

4    Count II alleges violations involving: (1) age discrimination pursuant to 15 U.S.C. § 1691(a)(1)

5    and (2) failure to provide adequate notice of adverse action and written appraisals pursuant to 15

6    U.S.C. § 1691(d) and (e) and related regulations.  Although he does not cite it, 15 U.S.C. §

7    1691e(c) provides a private right of action for equitable or declaratory relief for "an aggrieved

8    applicant" seeking to enforce the ECOA's requirements (or the related regulations at issue,

9    pursuant to 15 U.S.C. § 1691a(g)) against a creditor.

10    **i.    Discrimination**

11    Plaintiff's discrimination claim alleges discrimination based on section 1691(a)(1), which

12    prohibits discrimination by a creditor against any applicant on the basis of "race, color, religion,

13    national origin, sex or marital status, or age."  The amended complaint appears to focus entirely on

14    age discrimination and does not specifically address any other form of discrimination.  (*See, e.g.,*

15    AC ¶¶ 22, 22.)[6]  Despite its length, the amended complaint is extremely sparse on specific factual

16    allegations that directly apply toward any form of discrimination claim.

17    The Court understands plaintiff's discrimination claim to be based on a theory of disparate

18    impact.  (AC ¶ 20.)  To state a claim for disparate impact, plaintiff must allege facts demonstrating

19    "a significant disparate impact on a protected class caused by a specific, identified . . . practice or

20    selection criterion."  *Ramirez v. GreenPoint Mortgage Funding, Inc.*, 633 F. Supp. 2d 922, 927

21    (N.D. Cal. 2008).

22

23    _____

      [6] Plaintiff contends in his opposition brief that he was also a victim of gender and marital

24    status discrimination.  (RMS Oppo. at 9-12.)  Plaintiff argues RMS employees "fixed on plaintiff's
      marital status insisting that plaintiff's estranged spouse would need to sign the loan documents and

25    attend counseling if plaintiff was to qualify for the HECM."  (*Id.* at 9.)  However, the portions of
      the amended complaint he cites in support of this contention simply relate to the counseling

26    requirement and RMS's refusal to consider his application based on the property's ownership
      status.  They do not allege fixation on his marital status by RMS employees or their insistence that

27    his wife sign loan documents.  Because plaintiff does not specifically allege gender or marital
      status discrimination in his amended complaint, the Court will not accept these allegations—

28    presented for the first time in his opposition brief—for purposes of considering this motion.

United States District Court
Northern District of California

1  Here, plaintiff fails to meet that standard.  Rather, plaintiff's allegations of discrimination

2  based on age are inextricably intertwined with the status of the property being held in an

3  irrevocable trust.  For instance, plaintiff alleges he was discriminated against "because he was an

4  'elderly homeowner' who held the proposed real property security in an irrevocable living trust."

5  (AC ¶ 20.)  Plaintiff offers no specific, non-conclusory allegation to suggest RMS's decision not

6  to process his loan application was based on his age.  To the contrary, plaintiff alleges the reverse

7  mortgage industry "actually target[s] elderly consumers" who are "unmindful of the high cost of

8  reverse mortgage loan credit."  (*Id*. ¶ 22.)

9  Plaintiff has not put forth specific facts of age discrimination that, accepted as true, make

10  plausible his conclusory allegations that he was discriminated against based on age or that RMS

11  employs a specific policy across-the-board that causes a significant disparate impact on elderly

12  homeowners.  Instead, the amended complaint itself suggests the basis for RMS's refusal to

13  consider his loan application was likely the status of the property—namely, the fact that it was

14  held in trust for third-party beneficiaries.  Even if RMS implemented a policy to reject reverse

15  mortgage applications where the property in question was held in irrevocable trust for the benefit

16  of third parties, plaintiff has not pled any facts suggesting that policy would have a disparate

17  impact on elderly homeowners.  Plaintiff nowhere alleges RMS has granted reverse mortgages to

18  younger applicants who merely hold a life estate in a property that is otherwise held in trust for the

19  benefit of third-party beneficiaries.  Only homeowners over the age of 62 are eligible for HECM

20  loans.  Moreover, reverse mortgages—as plaintiff points out in his pleadings—become

21  increasingly risky on long time horizons.  Given its contradictory allegations, the Court does not

22  read the essence of the amended complaint to allege that RMS is discriminating against plaintiff

23  on the basis of his age.

24  Finally, the Court notes that plaintiff's initial complaint did not include a claim of age

25  discrimination, and only mentioned the ECOA in passing.  The current conclusory allegations

26  therefore appear to be no more than an attempt to establish standing in light of arguments raised in

27  defendants' mooted initial motions to dismiss.

28  A complaint alleging sufficient facts to show that a lender rejected a loan application on

the basis of an applicant's age, marital status, or other consideration prohibited under the ECOA would typically state a claim for relief.  The Court, however, will not credit wholly conclusory allegations of discrimination that lack any supporting factual allegations.

### ii.    Notice Requirements

Plaintiff next alleges violations of sections of the ECOA that place procedural notice and informational requirements on lenders.  Specifically, he alleges violations of: (1) 15 U.S.C. § 1691(d)(1); (2) 15 U.S.C. § 1691(d)(2) (and the related 12 CFR § 202.9(a)); and (3) 15 U.S.C. § 1691(e).  The Court addresses each provision in turn.

First, section 1691(d)(1) provides that "[w]ithin thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application."  While presenting a conclusory allegation that RMS violated this section, plaintiff elsewhere alleges RMS provided oral notice of its decision around September 26, 2013, a mere two days after plaintiff submitted his counseling certificate to RMS.  (AC ¶¶ 25, 30.)  It is not clear from the face of the pleadings when exactly plaintiff's "completed application" was submitted.  Nevertheless, the Court cannot reasonably infer based on the timeline presented that it occurred more than thirty days prior to the September 26, 2013 notice of decision.  Thus, plaintiff fails to state a claim under section 1691(d) based on the face of the amended complaint.

Second, section 1691(d)(2) provides that applicants are entitled to written explanations for adverse actions taken against them by creditors.  A related section of Regulation B, issued by the Board of Governors of the Federal Reserve System pursuant to the ECOA, includes an additional requirement that the creditor first receive "a completed application."  12 CFR § 202.9(a).  The regulation defines a "completed application" as one in which:

> . . . a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (including, but not limited to, credit reports, any additional information requested from the applicant, and any approvals or reports by governmental agencies or other persons that are necessary to guarantee, insure, or provide security for the credit or collateral).

12 CFR § 202.2(f).

Plaintiff's allegations in connection with this claim largely track the statutory language and

United States District Court
Northern District of California

1    are close to conclusory.  The Court finds, however, that plaintiff's allegations that RMS failed to

2    provide him with written notification regarding its decision to refuse to process his application are

3    sufficient to state a claim under these provisions.  (AC ¶ 88.)  As to Regulation B's "completed

4    application" requirement, RMS argues plaintiff failed to provide it with sufficient information to

5    constitute a completed application under the statute.  However, plaintiff has alleged that he

6    provided "personal and financial information" to RMS and "submitted a completed application."

7    (AC ¶¶ 25, 53.)  Those allegations are sufficient at this early stage of the case to survive under

8    Rule 12(b)(6).

9         Finally, section 1691(e) provides that creditors shall provide to applicants copies of written

10   appraisals and valuations developed in conjunction with their loan applications.  Plaintiff alleges

11   he received notice that his application could not be processed a mere two days after RMS

12   forwarded a copy of the Trust documents to its legal counsel.  No specific facts are alleged to

13   support the suggestion that RMS developed written appraisals and valuations of the subject

14   property during that brief and preliminary stage of the process.  As RMS points out in its reply

15   brief, plaintiff also inconsistently pleads that he requested the appraisals in writing and argues in

16   his opposition brief that they were requested via phone conversations.  (Dkt. No. 29 at 9.)

17        Based upon the foregoing, the Court therefore **GRANTS IN PART AND DENIES IN PART**

18   RMS's Motion to Dismiss Count II.  Plaintiff fails to state a claim for violation of the asserted

19   provisions of the ECOA *except* for section 1691(d)(2)'s requirements of written notice in

20   connection with adverse decisions (and the related provision of Regulation B).

21        **C.    Count III**

22        Finally, under Count III, plaintiff alleges violations of the UCL.  The UCL prohibits any

23   unlawful, unfair or fraudulent business act or practice.  Cal. Bus. & Prof. Code § 17200; *Cel-Tech*

24   *Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999).  First, as to the

25   unlawful prong, plaintiff's UCL claim is predicated upon "violations of federal and state law"

26   such as the ECOA.  Second, as to the unfair conduct prong, plaintiff again puts forth his

27   discredited theory that RMS was obligated to provide him with a loan so long as he was a

28   "qualified applicant."  Third, as to the fraudulent conduct prong, plaintiff alleges false advertising

United States District Court
Northern District of California

15

by RMS (AC ¶¶ 21, 91), but the Court will not credit that bare and conclusory allegation—particularly in light of Rule 9(b) pleading requirements.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the . . . UCL.").  Indeed, many of plaintiff's allegations relating to false or misleading advertising appear targeted at the reverse mortgage industry as a whole, as opposed to RMS in particular.  Therefore, the Court will only consider the unlawful prong to determine whether the amended complaint properly states a claim under the UCL.

Plaintiff identifies as one such violation HUD's purported negligent supervision of RMS.  Even if the allegation against HUD were warranted, it could not support a UCL claim against RMS.  Plaintiff does, however, allege a number of other specific violations by RMS, such as a purported violation of 15 U.S.C. § 1691(d)(2) regarding provision of written notice relating to adverse action.  As discussed above, plaintiff states a claim under that section.  This would typically be sufficient to support his UCL claim.  However, "ECOA bars pursuit of state law claims if the plaintiff also pursues relief under ECOA itself."  *Cabrera v. Countrywide Home Loans Inc*., Case No. 11-cv-4869 SI, 2013 WL 1345083, at *6 (N.D. Cal. Apr. 2, 2013) (dismissing UCL claim based on ECOA violation where plaintiff also brought a claim under the ECOA); *see also* 15 U.S.C. § 1691d(e).  Because plaintiff has also brought a claim under the ECOA, he is not entitled to also assert a claim under California's Unfair Competition Law premised upon the same purported conduct.  Plaintiff's UCL claim is therefore dismissed.

### D.    Leave to Amend

Leave to amend is liberally granted.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Chodos v. West Pub. Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).  Thus, the Court grants plaintiff leave to amend consistent with this Order.  Counsel is cautioned that he must comply with his Rule 11 obligations.

Plaintiff shall file a Second Amended Complaint ("SAC") within **twenty-one (21) days** from the date of this Order.  The SAC must comport with the guidelines set forth in this Order.  It must not exceed 25 pages without permission from the Court and must comply with all applicable rules as to form.  Plaintiff is strongly cautioned to revise substantially his complaint and focus

16

solely on the relevant factual allegations without unnecessary facts or legal argument.  Any SAC must take care to set out clearly which allegations pertain to which defendants and which specific facts support each otherwise conclusory allegation.  It must satisfy the requirements of Rule 8 and provide "*a short and plain statement* of [each] claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (emphasis added).  Dismissed claims that plaintiff does not attempt to re-allege in light of this Order, or allegations that are otherwise irrelevant to plaintiff's claims, should be removed.

In light of the Court's order, RMS's motion to strike (RMS Mot. at 3-4) is **DENIED WITHOUT PREJUDICE AS MOOT**.

## IV.   CONCLUSION

Therefore, the Court orders as follows:

1)  HUD's Motion to Dismiss is **GRANTED WITH LEAVE TO AMEND**.

2)  RMS's Motion to Dismiss Count I is **GRANTED WITH LEAVE TO AMEND**.

3)  RMS's Motion to Dismiss Count II is **DENIED** only in connection with RMS's purported violation of 15 U.S.C. § 1691(d)(2) and the related section of 12 CFR § 202.9(a).  RMS's Motion to Dismiss Count II is otherwise **GRANTED WITH LEAVE TO AMEND**.

4)  RMS's Motion to Dismiss Count III is **GRANTED WITH LEAVE TO AMEND**.

This Order terminates Docket Nos. 25 and 28.

**IT IS SO ORDERED.**

Dated: December 17, 2014

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

17