UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD A. CANATELLA,<br><br>    Plaintiff,<br><br>    v.<br><br>JULIÁN CASTRO, SECRETARY OF THE U.S. DEPARTMENT OF HOUSING AND URBAND DEVELOPMENT, et al.,<br><br>    Defendants. | Case No. 13-cv-05937-HSG<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 50, 51 |

Pending before the Court are two motions to dismiss the Second Amended Complaint ("SAC"), one filed by Defendant Reverse Mortgage Solutions, Inc. ("RMS") and another filed by Defendant Julian Castro, Secretary of the United States Department of Housing and Urban Development ("HUD").[1] *See* Dkt. Nos. 50 ("HUD Mot."), 51 ("RMS Mot."). Plaintiff Richard A. Canatella ("Canatella") filed oppositions to both motions, Dkt. Nos. 54 ("Opp. to RMS"), 55 ("Opp. to HUD"), and both Defendants filed replies, Dkt. Nos. 56 ("HUD Reply"), 57 ("RMS Reply").

Pursuant to Civil Local Rule 7-1(b), Defendants' motions are deemed suitable for disposition without oral argument. The Court has carefully considered the arguments made by the parties and, for the reasons described below, **GRANTS** Defendants' Motion to Dismiss with Leave to Amend.

### I.   BACKGROUND

Canatella's principal residence is 357 Vincente Street, San Francisco, CA ("357 Vincente"). SAC ¶ 15. He holds the property in fee simple as trustee of an irrevocable trust, the

---

[1] Julian Castro, the current Secretary of the U.S. Department of Housing and Urban Development, has replaced former Secretary Shaun Donovan as a defendant in this action.

Richard A. Canatella Family Trust, dated June 1, 1978 (the "Trust"), on behalf of its beneficiaries, Canatella's spouse, from whom he is separated, and his adult son. *Id.* ¶¶ 14-15. When he placed 357 Vincente into the Trust, Canatella reserved for himself a life estate in the residence. *Id.* ¶ 15.

This suit arises from Canatella's unsuccessful attempt to secure a reverse mortgage on 357 Vincente under the Home Equity Conversion Mortgage ("HECM") program. Reverse mortgage loans through the HECM program permit homeowners to "'withdraw' the equity in their home in the form of monthly payments, lump sum or line of credit." *Id.* ¶ 3. Canatella alleges that he submitted an application for a reverse mortgage loan to RMS in September of 2013, but was told that his application "could not be processed and the application could not proceed to underwriting consideration because plaintiff as trustee of a living trust lacked a beneficial interest in the real property security." *Id.* ¶ 33. Canatella contends that (1) RMS's decision to deny his application was contrary to HUD regulations, discriminatory, and without statutorily required notice and explanation; and that (2) HUD violated its duty to supervise the HECM program by failing to intervene on his behalf. *Id.* ¶¶ 25-34.

Canatella filed his Complaint on December 23, 2013 against HUD and RMS. *See* Dkt. No. 1. The Defendants filed motions to dismiss the Complaint, Dkt. Nos. 17 and 19, which Canatella mooted by filing an Amended Complaint. Dkt. No. 22. The Amended Complaint asserted counts for: (1) declaratory judgment against both defendants; (2) violation of the Equal Credit Opportunity Act ("ECOA") against RMS; and (3) violation of California's Unfair Competition Law against RMS. *See* Dkt. No. 22. The Defendants then filed motions to dismiss the Amended Complaint, which Judge Gonzalez Rogers, to whom this case was previously assigned, granted in part and denied in part. Dkt. No. 44 (*Canatella v. Reverse Mortgage Solutions Inc.*, No. 13-cv-05937-YGR, 2014 WL 7205146 (N.D. Cal. Dec. 17, 2014)). Canatella filed a Second Amended Complaint ("SAC") on January 5, 2015. Dkt. No. 45. The SAC alleges only two counts: declaratory relief against HUD and violation of ECOA against RMS. This order resolves Defendants' third round of motions to dismiss.

## II. FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)

A motion under Rule 12(b)(1) challenges the grounds for the Court's subject matter

jurisdiction. See Fed. R. Civ. P. 12(b)(1). To establish Article III standing, a plaintiff must satisfy three elements: (1) "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) causation—"there must be a causal connection between the injury and the conduct complained of"; and (3) redressability—"it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks, citations, and footnote omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561.

Canatella's Amended Complaint sought declaratory judgment on the theory that HUD negligently supervised RMS, thereby failing to protect Canatella from a purportedly unlawful denial of his loan application, and to request as relief an order directing HUD to require RMS to approve his requested HECM loan. In granting HUD's motion to dismiss the Amended Complaint, Judge Gonzalez Rogers noted that Canatella "failed to put forth any authority demonstrating HUD has both (1) an affirmative duty to supervise lenders' decisions as to specific HECM loan applications and (2) the ability to order RMS to offer a reverse mortgage to plaintiff," while HUD offered authority suggesting it had no such supervisory obligation under the statutory regimes raised by Canatella. *Canatella*, 2014 WL 7205146, at *3 (citing 15 U.S.C. § 1691c); *see also Marinoff v. U.S. Dep't of Housing & Urban Dev.*, 892 F.Supp. 493, 496 (S.D.N.Y. 1995)). Accordingly, Judge Gonzalez Rogers found that because Canatella had "not demonstrated that HUD has that authority, plaintiff has no standing to assert his claims against HUD based on the allegations in the operative complaint." *Id*.

The SAC does not remedy this deficiency. While Canatella argues that HUD could "provide a remedy by suggesting that RMS fund the maximum loan for which plaintiff is eligible, whereupon RMS could do so and HUD could accept an assignment of the resulting insured mortgage in exchange for a payoff of the balance to RMS," Opp. to HUD at 2, Canatella cites no authority suggesting that he has a legal right insist upon—or the Court to order—such financial

3

transactions. Just like the Amended Complaint, the SAC does not provide legal authority suggesting that "HUD has both (1) an affirmative duty to supervise lenders' decisions as to specific HECM loan applications and (2) the ability to order RMS to offer a reverse mortgage to plaintiff." *Canatella*, 2014 WL 7205146, at *3. HUD's general statutory obligation to oversee the HECM program does not confer on Canatella a right to sue HUD when it fails to oversee the program in the manner he would prefer. *See Rapid Transit Advocates, Inc. v. S. California Rapid Transit Dist.*, 752 F.2d 373, 376 (9th Cir. 1985) ("The Supreme Court has drawn a distinction between statutes whose language focuses on a right granted to a benefitted class of persons— where a private cause of action is generally found—and statutes framed as a 'general prohibition or command to a federal agency'—where a cause of action is seldom implied.") (citation omitted); *see also Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 647 (2004) (holding claims against agencies under the Administrative Procedure Act must be limited to discrete agency action that the agency is required to take, as opposed to "broad programmatic attack[s]").[2]

    Canatella's attempt to manufacture a redressable injury after the issuance of Judge Gonzalez Rogers' order also fails. In a letter sent to HUD and dated one day after Judge Gonzalez Rogers' order, Canatella "request[ed] that HUD address plaintiff's claim to entitlement to HUD assistance in obtaining a reverse mortgage or HECM loan." Declaration of Paul Smith ("Smith Decl."), Exh. A.[3] Canatella complained that RMS had discriminated against him by "wrongfully refusing to process or consider plaintiff's application for underwriting," primarily on the basis of

---

[2] This case is distinguishable from *Bennett v. Donovan*, 703 F.3d 582 (D.C. Cir. 2013), where plaintiffs challenged the lawfulness of a HUD regulation that failed to protect spouses of mortgagors from foreclosure in direct contravention of the governing statute. In other words—and unlike in this case—the plaintiffs in *Bennett* challenged a discrete agency action (the regulation promulgated by the agency), which was alleged to be contrary to actions required of the agency (its statutory obligation to protect spouses of homeowners from displacement). *See id*. at 586 ("[W]e admit to being somewhat puzzled as to how HUD can justify a regulation that seems contrary to the governing statute."). *Bennett* provides no support for Canatella's argument that HUD's broad mandate to administer the HECM program and investigate claims of discrimination confers standing to sue the agency for declaratory relief whenever an applicant is denied a reverse mortgage by a third-party like RMS.

[3] The Court considers the letter sent by Canatella to HUD pursuant to the incorporation by reference doctrine given that, despite not being attached to Canatella's pleading, (1) its contents are alleged in the SAC, *see* SAC ¶ 27; and (2) no party has questioned its authenticity. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

his age. *Id*. at 4-6. HUD closed Canatella's claim for lack of jurisdiction because the most recent of the allegedly discriminatory acts was not within the statute of limitations. *See* Smith Decl., Exh. C. Canatella offers no explanation or legal authority suggesting that HUD's decision not to pursue Canatella's discrimination claim on statute of limitations grounds remedies the deficiencies identified above. Numerous courts have found the opposite. *See, e.g., Phifer v. Sec'y U.S. Dep't of Hous. & Urban Dev*., No. 08-cv-0299-LKK-DAD-PS, 2009 WL 8706810, at *4 (E.D. Cal. Feb. 2, 2009) ("[Section] 3613 does not provide a private right of action for judicial review of a determination by HUD to dismiss an administrative complaint, and plaintiff has not cited any provision of the FHA that provides such a right of action and waives sovereign immunity for such an action."); *see also Godwin v. Secretary of Housing & Urban Dev*., 356 F.3d 310, 312 (D.C. Cir. 2004) (finding no express or implied cause of action under the FHA for judicial review when the Secretary declines to issue a charge of discrimination against a third party).

Finally, even if Canatella did have standing to assert his claims against HUD, the Court would decline to exercise its jurisdiction under the Declaratory Judgment Act given HUD's tenuous connection to this lawsuit. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Because the exercise of jurisdiction under the Act is not compulsory, even when a district court clearly has jurisdiction under the Declaratory Judgment Act, it may decline, in its discretion, to exercise that jurisdiction if it determines that declaratory relief is not appropriate. *See Brillhart v. Excess Ins. Co. of Am*., 316 U.S. 491, 494 (1942). The Court agrees with Judge Gonzalez Rogers' determination that it would be a waste of judicial resources to address the question of whether HUD is obligated to insure a loan to plaintiff given that HUD has not been presented with a loan to insure. *See Wilton v. Seven Falls Co*., 515 U.S. 277, 288 (1995) ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.").

### A. Federal Rule of Civil Procedure 12(b)(6)

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain sufficient facts to state a plausible claim on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). If the court dismisses the complaint, it should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted). When a party repeatedly fails to cure deficiencies, however, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

### A. Count I: Declaratory Relief Against HUD

Although the Court has already found that plaintiff lacks standing to assert Count I against HUD and therefore need not reach the 12(b)(6) motion as to this count, it nevertheless does so, finding 12(b)(6) to be an appropriate alternative basis for dismissing Count I.

In Count I, Canatella seeks declaratory relief against HUD premised upon a theory of negligent supervision by the agency: "HUD has both (1) an affirmative duty to supervise lenders' decisions as to specific HECM loan applications and (2) the ability to redress RMS refusal to process plaintiff's HECM application, proceed to underwriting consideration and offer plaintiff an

6

HECM loan." SAC ¶ 27. However, as was the case with Canatella's briefing with respect to the Amended Complaint, Canatella has not put forth any authority suggesting that a private lender, such as RMS, has an obligation to grant a loan to every applicant who qualifies under the HECM guidelines. To the contrary, HUD guidelines appear to provide substantial discretion to lenders in determining whether a particular applicant is qualified, such as HUD 4235.1, 4-5(A)(4), which provides that "[t]he lender must be satisfied that the trust is valid and enforceable." *See Canatella*, 2014 WL 7205146 at *7. In addition, while Canatella has cited to HUD's broad statutory obligation to effectuate the purposes of the HECM program, SAC ¶ 25, he has still failed to identify authority that suggests HUD has the right or obligation to supervise the lending decisions of third parties, *see id.* at *3.

Accordingly, Canatella has failed to allege facts sufficient to state a claim for declaratory relief against HUD.

### B.  Count II: Violation of ECOA Against RMS

In Count II, plaintiff alleges various violations of ECOA against RMS. Count II alleges violations involving: (1) age discrimination pursuant to 15 U.S.C. § 1691(a)(1);[4] and (2) failure to provide adequate notice of adverse action and written appraisals pursuant to 15 U.S.C. § 1691(d) and (e) and related regulations.

#### 1. Discrimination

Section 1691(a)(1) prohibits discrimination by a creditor against any applicant on the basis

---

[4] Although the first paragraph of Count II in the SAC asserts that RMS unlawfully discriminated against Canatella on the basis of "age, gender and marital status," SAC ¶ 28, the factual allegations that follow concern only RMS's purported age discrimination, *id.* ¶¶ 28-34. The SAC's sole mention of facts related to marital or gender discrimination is found under the "Subject Matter Jurisdiction and Venue" heading, where Canatella alleges that he disclosed to RMS that he was unable to get his spouse's cooperation in the application process, and that "RMS presumably sensed plaintiff's spouse may cause trouble so RMS employees required spouse to sign all loan documents or plaintiff's HECM application would be denied." *Id.* ¶ 6. To the extent that Canatella actually seeks to plead a disparate impact theory based on marital or gender discrimination in Count II, his claim cannot survive a motion to dismiss. The SAC makes no effort to allege facts sufficient to show that RMS had a policy or practice that has a significant disparate impact based on marriage status or gender. The allegation that RMS insisted that Canatella's spouse (who is a beneficiary of the Trust) sign the loan application when Canatella disclosed she did not support the application does not approach the showing necessary to plead a significant disparate impact.

7

of "race, color, religion, national origin, sex or marital status, or age." To state a claim for disparate impact, plaintiff must allege facts demonstrating "a significant disparate impact on a protected class caused by a specific, identified . . . practice or selection criterion." *Ramirez v. GreenPoint Mortgage Funding, Inc.*, 633 F.Supp.2d 922, 927 (N.D. Cal. 2008). Canatella has not met this standard. Rather, his allegations of discrimination based on age are inextricably intertwined with the fact that his property is held in an irrevocable trust. *See* SAC ¶ 28 ("But RMS discriminated against plaintiff in favor of younger applicants who hold assets in revocable [as opposed to irrevocable] trusts."). Canatella does not (and cannot) allege that RMS granted reverse mortgages to non-elderly applicants acting as trustees for similar irrevocable trusts, as only homeowners over the age of 62 are eligible for HECM loans. *See* 24 C.F.R. § 206.33. Nor does Canatella allege that elderly homeowners of his age (76) are more likely to hold property in an irrevocable trust than slightly less elderly homeowners that also meet HECM's age requirement.[5] At base, Canatella alleges that RMS rejected his reverse mortgage application because of the status of his property—namely, the fact that it was held in irrevocable trust for third-party beneficiaries—and then makes the unsupported and conclusory leap that the status of his property is somehow connected to his age. These conclusory allegations do not support a claim for relief. *See Twombly*, 550 U.S. at 555.

### 2. Notice Requirements

Canatella alleges violations of sections of ECOA that require RMS to provide notice of a decision within 30 days of receipt of a completed application for credit, 15 U.S.C. § 1691(d)(1); provide a written statement of reasons if that decision constitutes an adverse action, *id.* at § 1691(d)(2); and provide to applicants copies of written appraisals and valuations developed in

---

[5] The Court notes that—although not briefed by the parties and not yet addressed by the Ninth Circuit—even a statistically significant showing that relatively younger HECM-eligible homeowners were favored by RMS's policies may not state a disparate impact claim. *See Katz v. Regents of the Univ. of California*, 229 F.3d 831, 835 (9th Cir. 2000) ("Although the Ninth Circuit has not expressly addressed the issue, some circuits have held that claims based on the adverse impact of a policy among sub-classes within a larger protected class are not cognizable.").

8

1    conjunction with their loan applications, 15 U.S.C. § 1691(e). Judge Gonzalez Rogers' order
2    granted RMS's motion to dismiss Canatella's claims under sections 1691(d)(1) and 1691(e), but
3    denied the motion as to 1691(d)(2). *Canatella*, 2014 WL 7205146 at *8-9. Canatella re-alleged
4    claims under sections 1691(d)(1) and 1691(e) in the SAC, *see* SAC ¶¶ 33-34, and RMS again
5    moved to dismiss for failure to state a claim, RMS Mot. at 12. Canatella's opposition to RMS's
6    motion did not defend these claims, which, under the circumstances, results in a waiver. *Stichting*
7    *Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("In
8    most circumstances, failure to respond in an opposition brief to an argument put forward in an
9    opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (collecting
10   cases). In addition, the Court has reviewed the relevant paragraphs of the SAC and finds that the
11   allegations contained therein do not remedy the deficiencies identified by Judge Gonzelez Rogers
12   when she dismissed those claims. *See Canatella*, 2014 WL 7205146 at *8-9.

### C. Canatella's Purported Fair Housing Act Claim

14   Canatella's opposition to RMS's motion to dismiss also argues that his claim for
15   discrimination and retaliation under the Fair Housing Act ("FHA") against RMS should survive
16   the pleading stage. *See, e.g.,* Opp. to RMS at 1. Canatella's position is curious, given that the
17   SAC does not allege a cause of action against RMS under the FHA. The SAC only mentions the
18   FHA in the "Subject Matter Jurisdiction and Venue" section, and solely for the proposition that
19   "HUD must investigate and resolve complaints of alleged victims of housing discrimination."
20   SAC ¶ 4. Moreover, the SAC expressly identifies only two causes of action: (1) "First Claim for
21   Declaratory Relief Against HUD," *id*. ¶¶ 25-27; (2) "Second Claim for Violation of ECOA
22   Against RMS," *id.* ¶¶ 28-34. The Court may not consider new allegations—let alone entirely new
23   causes of action—alleged for the first time in an opposition to a motion to dismiss. *See, e.g.,*
24   *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) ("The 'new'
25   allegations contained in the . . . opposition motion . . . are irrelevant for Rule 12(b)(6) purposes.
26   In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the
27   complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's
28   motion to dismiss.") (emphasis in original). To the extent Canatella wishes to amend his pleading

to assert a cause of action against RMS under the FHA, he must either (1) secure the Defendants' consent; or (2) move the Court to allow the amendment pursuant to Federal Rule of Civil Procedure 15(a)(2).

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Defendants motions to dismiss and **DISMISSES WITHOUT PREJUDICE** Canatella's SAC. Canatella will be provided one last opportunity to amend his pleading to allege facts sufficient to (1) demonstrate standing as to HUD; and (2) state a claim as to Counts I and II of the SAC. The Court cautions that its decision to provide leave to amend is not an invitation for Canatella to re-plead substantially similar facts in the hope of a different result. The Court has provided Canatella two detailed decisions explaining exactly how and why the Amended Complaint and SAC have failed. If he cannot plead facts that remedy the deficiencies identified by the Court, he *should not* file a Third Amended Complaint ("TAC"). Canatella is cautioned to carefully consider his obligations under Rule 11 in deciding whether to amend. To the extent that Canatella decides to file a TAC, he must do so no later than 21 days from the date of this order.

Finally, this order does not grant Canatella leave to assert a cause of action under the FHA. Should Canatella wish to do so, he must comply with Federal Rule of Civil Procedure 15(a)(2) as described above.

**IT IS SO ORDERED.**

Dated: October 6, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge