UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD A. CANATELLA,<br><br>  Plaintiff,<br><br>  v.<br><br>REVERSE MORTGAGE SOLUTIONS INC,<br><br>  Defendant. | Case No.13-cv-05937-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 70 |

Before the Court is Defendant Reverse Mortgage Solutions' ("RMS") motion to dismiss the Third Amended Complaint ("TAC"). Dkt. No. 70 ("Mot. to Dismiss"). Plaintiff Richard Canatella filed an opposition to the motion. Dkt. No. 71 ("Opp."). Defendant RMS filed a reply. Dkt. 73 ("Reply").

Pursuant to Civil Local Rule 7-1(b), Defendant RMS's motion is deemed suitable for disposition without oral argument. The Court has carefully considered the arguments made by the parties, and **GRANTS** Defendant RMS's motion to dismiss with prejudice.

**I.  BACKGROUND**

Plaintiff is seventy-seven years old. TAC ¶ 9. Since 2006, his principal residence has been 357 Vicente Street, San Francisco, CA ("357 Vicente"). This property is held in an irrevocable trust—the Richard A. Canatella Family Trust, dated June 1, 1978 (the "Trust")—designating Plaintiff as trustee and his spouse and adult son as contingent beneficiaries. *Id.* ¶¶ 9-10. Plaintiff is married but separated from his spouse. *Id.* ¶ 10.

This suit arises from Plaintiff's unsuccessful attempt to secure a reverse mortgage on 357 Vicente under the Home Equity Conversion Mortgage ("HECM") program. *Id.* ¶¶ 1, 19. This federal program "allow[s] elderly homeowners to convert home equity into monthly payments,

lump sum or line of credit." *Id.* ¶ 2. Plaintiff contends that he submitted an application for a reverse mortgage to RMS on August 23, 2013. *Id.* ¶ 19. On September 26, 2013, RMS allegedly declined to process his application "because plaintiff as trustee of a living trust lacked a beneficial interest in the proposed real property," and stated that "for plaintiff to be eligible he should first convey the property to a revocable as opposed to an irrevocable trust." *Id.* He maintains that this "purported requirement of transfer for eligibility was false since there is no such requirement in the statutory and regulatory regimen under the HECM program." *Id.*

Plaintiff filed his Complaint on December 23, 2013 against RMS and the United States Department of Housing and Urban Development (together, "Defendants"). *See* Dkt. No. 1. The Defendants filed motions to dismiss the Complaint, Dkt. Nos. 17 & 19, which Canatella mooted by filing the First Amended Complaint ("FAC"). Dkt. No. 22. The Defendants then filed motions to dismiss the Amended Complaint, Dkt. Nos. 25 & 28, which Judge Gonzalez Rogers, to whom this case was previously assigned, granted in part with leave to amend and denied in part. Dkt. No. 44 (*Canatella v. Reverse Mortg. Sols., Inc.*, No. 13-cv-05937-YGR, 2014 WL 7205146 (N.D. Cal. Dec. 17, 2014)). Plaintiff then filed a Second Amended Complaint ("SAC") on January 5, 2015. Dkt. No. 45. The Defendants both filed motions to dismiss the SAC. Dkt. Nos. 50-51. The Court granted the motions to dismiss and dismissed without prejudice Plaintiff's SAC. Dkt. No. 61 (*Canatella v. Castro*, No. 13-CV-05937-HSG, 2015 WL 5818070 (N.D. Cal. Oct. 6, 2015)). The Court gave Plaintiff "*one last opportunity* to amend his pleading," but cautioned that this was "not an invitation for Canatella to re-plead substantially similar facts in the hope of a different result." *Id.* at *6 (emphasis added).

On February 10, 2016, Plaintiff filed the TAC, naming only RMS as the defendant. Dkt. No. 69, at 1-2. He alleges claims for declaratory relief, *id.* ¶¶ 27-32 ("Count 1"); violation of the Fair Housing Act ("FHA"), *id.* ¶¶ 33-44 ("Count 2"); disparate impact discrimination, *id.* ¶¶ 45-58 ("Count 3"); and violation of the Equal Credit Opportunity Act ("ECOA"), *id.* ¶¶ 59-67 ("Count 4"). This order resolves Defendant RMS's fourth and final motion to dismiss in this case.

**II.    FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain

statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for "fail[ing] to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotation marks and citation omitted). And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

**A.     FHA**

In Count 2, Plaintiff alleges that RMS violated sections 3605 and 3617 of the FHA. TAC ¶¶ 35, 44. The Court concludes that these claims must be dismissed.

    **1.     Discrimination**

In Count 2, Plaintiff alleges that RMS violated section 3605 of the FHA by denying his loan application on the basis of sex, marital status, and age. TAC ¶¶ 35, 44.[1] But his section 3605

---

[1] Plaintiff also alleges discrimination on the basis of "gender." TAC ¶ 2. But gender is not a characteristic named in section 3605, and nothing in Plaintiff's complaint provides any basis for concluding that "gender" means anything different than "sex" in this case. The Court thus analyzes whether Plaintiff has adequately pled discrimination on the basis of sex.

1  discrimination claim cannot survive RMS's motion to dismiss.

2  Section 3605(a) applies to "any person or other entity whose business includes engaging in residential real estate-related transactions." 42 U.S.C. § 3605(a) (2012). Such an entity is prohibited from "discriminat[ing] against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." *Id.* Section 3605 applies to residential lending. *See id.* § 3605(b) (defining "residential real estate-related transaction"); *Ramirez v. GreenPoint Mortg. Funding, Inc.*, 633 F. Supp. 2d 922, 925 (N.D. Cal. 2008) (analyzing discrimination claim regarding residential lending under section 3605).

Of the three bases of discrimination alleged by Plaintiff, two—age and marital status—fail because they are not prohibited by section 3605. *See* 42 U.S.C. § 3605(a); *see also Stabley v. Bank of Am., N.A.*, No. 2:11-CV-00635-GMN, 2014 WL 3645327, at *3 (D. Nev. July 22, 2014) ("Age is not a protected class under the FHA."); *Ewing Citizens for Civil Rights, Inc. v. Twp. of Ewing*, No. CIV.A. 05-1620 MLC, 2007 WL 2065832, at *5 (D.N.J. July 13, 2007) (same), *appeal filed*, 2014 WL 3645327 (July 22, 2014); *White v. U.S. Dep't of Hous. & Dev.*, 475 F.3d 898, 906 (7th Cir. 2007) ("[T]he FHA does not include marital status among its protected classifications."); *El Sereno, LLC v. City of Garland*, No. 3:09-CV-0556-D, 2010 WL 1741334, at *4 (N.D. Tex. Apr. 29, 2010) (same). *See generally* Robert G. Schwemm, *Housing Discrimination Law and Litigation* § 11:1 (2016) ("Other than prohibiting the seven bases of discrimination listed in the statute, the Fair Housing Act does not purport to limit the considerations that may be taken into account in a housing decision."). Plaintiff's allegation of "marital status" discrimination, *see* TAC ¶ 40, is not cognizable as "familial status" discrimination.[2] Thus, the only potentially colorable FHA allegation is discrimination on the basis

---

[2] Under the FHA, "familial status" refers to one or more individuals under eighteen years old living with the person holding legal custody over them, or that person's designee. *See* 42 U.S.C. § 3602(k); *see also* Schwemm, *supra*, § 11E:2 ("The basic principle . . . is . . . that families with children must be provided the same protections as other classes of persons protected by the Fair Housing Act.") Plaintiff's adult son is forty-two years old. TAC ¶ 10. Accordingly, his existence would not trigger protections against "familial status" discrimination even if he lived with Plaintiff.

4

of sex.

The Court understands Plaintiff's allegation of sex discrimination under section 3605 to be pled under a theory of disparate treatment.[3] Under this theory, the "prima facie case elements are: (1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury." *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999).

Although the FHA protects Plaintiff from discrimination on the basis of sex, there is no colorable basis for his claim that RMS discriminated against him on that basis when denying the loan. Specifically, Plaintiff alleges that RMS denied his application because his spouse objected to the loan, and that this constituted discrimination based upon sex, since she was a female and he was a male. *See* TAC ¶ 40. However, Plaintiff pleads no facts giving rise to a plausible inference that a woman in his circumstances would have been treated differently, or even that his sex had anything to do with the denial of his loan. In fact, he states that RMS denied his application because, as a trustee of a living trust, he had no beneficial interest in the proposed real property security. *See id.* ¶ 19. Plaintiff's allegation of FHA discrimination on the basis of sex is entirely implausible and conclusory, and cannot withstand a motion to dismiss. *See Twombly*, 550 U.S. at 555; *Gilead Scis.*, 536 F.3d at 1055.

### 2. Retaliation

Section 3617 of the FHA states, "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, . . . any right granted or protected by section . . . 3605 . . . ." *See* 42 U.S.C. § 3617. But Plaintiff's allegation that RMS retaliated against him in violation of section 3617, again, is entirely

---

[3] FHA discrimination claims are also cognizable under a theory of disparate impact. *See Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmties. Project, Inc.*, 135 S. Ct. 2507, 2525 (2015); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999). But the Court finds no basis for concluding that Plaintiff has pled such a theory. The Court does not understand Count 2 to put forward disparate impact arguments. *See* TAC ¶¶ 33-44. Count 3 attempts to do so, but cites no statutory basis. *See* TAC ¶¶ 45-58. And Count 3 only alleges discrimination on the basis of age, which is not an actionable under the FHA. *See* Schwemm, *supra*, § 29:4; 15 U.S.C. 1691(a)(1). Thus, the Court assesses Count 3 under ECOA, which allows for age discrimination claims. *See* 15 U.S.C. § 1691(a)(1) (2012); Schwemm, *supra*, § 29:4. Finally, Counts 1 and 4 explicitly make non-FHA arguments. *See* TAC ¶¶ 27-32 (Declaratory Judgment Act); *id.* ¶¶ 59-67 (ECOA).

implausible and conclusory. He pleads no facts showing why the "wrongful denial of [his] mortgage application . . . supports a claim for . . . retaliation . . . ." *See* TAC ¶ 44. Instead, he simply lists the elements of a section 3617 claim and then declares that he has "sufficiently alleged the foregoing requirements." *See id.* The Court disagrees. Plaintiff cannot overcome RMS's motion to dismiss with this conclusory statement. *See Gilead Scis.*, 536 F.3d at 1055.

### B. ECOA

In Count 4, Plaintiff alleges that RMS violated ECOA by turning down his reverse mortgage application because of his age, sex, and marital status. TAC ¶¶ 59-60. In Count 3, he argues that RMS's advertising policy had a disparate impact on elderly homeowners like Plaintiff who apply for reverse mortgages. TAC ¶ 45. Finally, in Count 4, Plaintiff also alleges that RMS violated ECOA notice requirements and regulations. TAC ¶¶ 66-67 (citing 15 U.S.C. 1691(d)(1), (d)(2), (e); 12 C.F.R. 202.9(a)(1)(i)). None of these claims are sufficient to withstand RMS's motion to dismiss.

#### 1. Discrimination

Plaintiff alleges that RMS violated ECOA by denying his loan application on the basis of his age, sex (and "gender") and marital status. TAC ¶¶ 59-60. The TAC's jurisdictional section cites section 1691(a)(1) as the statutory basis of these ECOA allegations. *Id.* ¶ 2. In addition, he alleges age discrimination under a disparate impact theory, which the Court considers under section 1691(a)(1). None of Plaintiff's section 1691(a)(1) claims can survive RMS's motion to dismiss.

ECOA prohibits discrimination by "any creditor . . . against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract)." *See* 15 U.S.C. § 1691(a)(1) (2012). Although there is substantial overlap between discrimination claims under ECOA and the FHA, ECOA prohibits discrimination on some bases, such as marital status and age, which are not actionable under the FHA. *See* Schwemm, *supra*, § 29:4; *compare* 15 U.S.C. 1691(a)(1) *with* 42 U.S.C. § 3605(a). Under ECOA, the credit applicant may prove a violation

1  under theories of direct discrimination, disparate impact, or disparate treatment.[4]  *See Faulkner v.*

2  *Glickman*, 172 F. Supp. 2d 732, 737 (D. Md. 2001).

### a.  Direct Evidence

Under a direct evidence theory, Plaintiff fails to state a section 1691(a)(1) claim for discrimination on the basis of age, sex, or marital status.  Direct evidence includes "statements evidencing discriminatory intent."  *Faulkner*, F. Supp. 2d at 737.  Plaintiff does not describe any statements by RMS, or any other evidence, that plausibly could show that the company denied his loan with discriminatory intent.  Plaintiff's conclusory allegation that RMS engaged in "direct/overt discrimination," *see* TAC ¶ 60, is insufficient to overcome a motion to dismiss, *see Gilead Scis.*, 536 F.3d at 1055; *Twombly*, 550 U.S. at 555.

### b.  Disparate Treatment

Under a disparate treatment theory, Plaintiff also fails to state a section 1691(a)(1) claim for discrimination on the basis of age, sex, or marital status.  Courts in this district have required the plaintiff to plead the following elements under section 1691(a)(1): (a) plaintiff belongs to a "protected class"; (b) plaintiff "applied for credit with defendants"; (c) plaintiff "qualified for credit"; and (d) plaintiff "was denied credit despite being qualified."  *See, e.g.*, *Green v. Cent. Mortg. Co.*, 148 F. Supp. 3d 852, 879 (N.D. Cal. 2015).[5]  But Plaintiff does not plausibly allege that he was "qualified" for the loan, in light of HUD regulations.

HUD regulations regarding HECMs state as follows:

> The mortgagor shall hold title to the entire property which is the security for the mortgage. If there are multiple mortgagors, all the mortgagors must collectively hold title to the entire property which is the security for the mortgage. If one or more mortgagors hold a life estate in the property, for purposes of this section only the term "mortgagor" shall include each holder of a future interest in the property (remainder or reversion) who has executed the mortgage.

---

[4] These theories are imported from the employment discrimination context.  *See Faulkner*, 172 F. Supp. 2d at 937; *see also Ramirez v. GreenPoint Mortg. Funding, Inc.*, 633 F. Supp. 2d 922, 927 n.1 (N.D. Cal. 2008) ("[C]ourts look to employment discrimination jurisprudence when interpreting claims under the FHA and ECOA.").

[5] Although the court in *Green* did not specifically describe this test as being based on a disparate treatment theory, other districts courts have stated nearly identical elements when discussing the requirements to plead a disparate treatment claim under section 1691(a)(1).  *See, e.g.*, *Faulkner*, 172 F. Supp. 2d at 737.

24 C.F.R. § 206.35 (2016).

Under the regulations, Plaintiff is a "mortgagor" because he holds a life estate to 357 Vicente, while his spouse and adult son are each a "mortgagor" because each holds a contingent beneficial interest to the property. *See id.*; TAC ¶ 10. Nonetheless, the TAC fails to allege that his adult son qualified for the loan, and specifically states that Plaintiff's estranged spouse did not sign the loan paperwork, rendering her ineligible. *See* TAC ¶ 40; Mot. to Dismiss 6:16-18. Given Plaintiff's failure to allege facts that could plausibly show he was qualified for the loan, Plaintiff's section 1691(a)(1) discrimination claims pled under a disparate treatment theory fail.

### c. Disparate Impact

Under a disparate impact theory, Plaintiff fails to state an ECOA section 1691(a)(1) claim for discrimination on the basis of age or marital status.[6] To state a claim for disparate impact, the plaintiff must allege facts plausibly showing that the defendant's "specific, identified practice or selection criterion" caused a "significant disparate impact on a protected class." *See Ramirez*, 633 F. Supp. 2d at 925, 927. Plaintiff has not met this standard.

Plaintiff fails to allege a specific practice by RMS that has plausibly caused a significant disparate impact on elderly homeowners. His conclusory statements regarding RMS's advertising policy do not suffice. *See, e.g.*, TAC ¶ 45 ("Plaintiff specifically identifies RMS advertising policy as a specific, identified practice or selection criterion having a disparate or negative affect [sic] on elderly homeowners, a protected class of HECM borrowers."); *see also Gilead Scis.*, 536 F.3d at 1055. Essentially, Plaintiff claims that RMS's advertising "target[s] elderly homeowners like plaintiff" to apply for reverse mortgage loans. *See id.* ¶¶ 52, 55. Plaintiff characterizes this advertising as "misleading" because such loans "are not easy to get by people 62 or older." *See id.* ¶ 47. But only homeowners over the age of 62 are eligible for HECM loans. *See* 24 C.F.R. § 206.33. Thus, Plaintiff "does not (and cannot) allege that RMS granted reverse mortgages to non-elderly applicants acting as trustees for similar irrevocable trusts . . . ." *See Canatella*, 2015 WL

---

[6] The TAC does not allege a disparate impact theory under ECOA section 1691(a)(1) for discrimination on the basis of sex. *See* TAC ¶ 60 (alleging ECOA sex discrimination under what appear to be direct evidence and disparate treatment theories).

8

1   5818070, at *5.  Instead, his allegations of age discrimination are "intractably intertwined with the
2   status of the property held in an irrevocable trust." *See id.*, at *8; TAC ¶ 56 ("RMS selects for
3   preferential consideration in the granting of HECM to elderly borrowers those *who hold the*
4   *security property in revocable as opposed to irrevocable trusts*." (emphasis added)).  But he fails
5   to establish any plausible relationship between the status of holding real property in an irrevocable
6   trust and the age of the loan applicant.[7]

7   Plaintiff also fails to identify a practice or selection criterion of RMS that plausibly has a
8   disparate impact on the basis of marital status.  *See* TAC ¶¶ 62-63.  He purports to identify
9   "specific, identified practices or selection criteria including . . . refusing (1) to even process
10  plaintiff's loan application, and (2) to even proceed to underwriting consideration." *See id.* ¶ 62.
11  But the denial of Plaintiff's loan application, without more, does not plausibly describe a "specific
12  identified practice or selection criterion" on the part of RMS.  *See Ramirez*, 633 F. Supp. 2d at
13  927.  Plaintiff also alleges that:

> [t]he same "pattern or practice" occurs by screening out applicants holding real property in irrevocable trusts as candidates for an HECM, and those elderly borrower applicants married and living together as opposed to those separated from their spouse.  Such discriminatory conduct was evinced in this case by screening out plaintiff under the "pattern or practice" of denying any elderly home owner holding title in an irrevocable living trust, and elderly borrower applicants separated and living apart from their spouse, though plaintiff met eligibility requirements for an HECM.

19  TAC ¶ 63.  But this statement of RMS's alleged practice suffers from two deficiencies.  First,
20  Plaintiff's distinction between borrowers living together and borrowers living apart does not turn
21  upon marital status, since both types of borrowers are married.  Neither living together nor living
22  apart is a protected status under section 1691(a)(1).  *See* 15 U.S.C. § 1691(a)(1).  Second,
23  Plaintiff's statement regarding RMS's allegedly discriminatory policy is inextricably intertwined
24  with the holding of real property through an irrevocable living trust.  He fails to allege facts
25  showing any plausible connection between the trust status of the property and the marital status of

---

[7] Plaintiff was thirty-nine years old when the Trust was created.  *See* TAC ¶ 9 (reflecting that Plaintiff was born in November 1938 and that the Trust was created in June 1978).  A person of that age is not eligible for HECM loans.  *See* 24 C.F.R. § 206.33.

9

the borrower.

Accordingly, Plaintiff fails to state an ECOA section 1691(a)(1) claim under a theory of direct evidence, disparate treatment, or disparate impact.

### 2. Notice

The TAC alleges that RMS violated ECOA notice requirements and regulations. TAC ¶¶ 66-67 (citing 15 U.S.C. 1691(d)(1), (d)(2), (e); 12 C.F.R. 202.9(a)(1)(i)). These allegations require no new discussion, because they are repetitive of the SAC and unaccompanied by any new supporting facts. Paragraphs 66 and 67 of the TAC, representing Plaintiff's complete exposition of his ECOA notice claims, consist of language that is *entirely* cut and pasted from the SAC. *Compare* SAC ¶¶ 33-34 *with* TAC ¶¶ 66-67. Presented with exactly the same arguments and allegations, the Court again dismisses the ECOA notice claims. *See Canatella*, 2015 WL 5818070, at *5.

Accordingly, none of Plaintiff's allegations under ECOA state a claim upon which relief can be granted.

### C. Declaratory Relief

In Count 1, Plaintiff asserts a claim for declaratory relief. However, because his FHA and ECOA claims fail, the Court lacks subject matter jurisdiction and his claim for declaratory relief fails too.

The Declaratory Judgment Act ("DJA") states in part,

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (2012).[8]

A federal court may not award declaratory relief unless "there is a case of actual controversy within its jurisdiction." *See Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994) (citation omitted). The DJA is "procedural only" and does not extend federal jurisdiction.

---

[8] This provision contains several exceptions, but none are relevant here. *See* 28 U.S.C. § 2201(a).

10

1   *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950) (citation omitted).  Thus, a

2   federal court may not award declaratory relief unless the underlying claim provides a basis for

3   federal subject matter jurisdiction.  *See id.* at 674.  As a procedural statute dependent on an

4   underlying cause of action, the DJA makes available an "*additional remedy* to litigants" without

5   creating an independent "theory of recovery."  *See Team Enters., LLC v. W. Inv. Real Estate Trust*,

6   721 F. Supp. 2d 898, 911 (E.D. Cal. 2010) (original emphasis) (citations omitted), *aff'd*, 446 F.

7   App'x 23 (9th Cir. 2011).  Accordingly, where the plaintiff's "underlying claims fail, so too does

8   his declaratory relief claim."  *See Andre v. Bank of Am., NA*, No. 14-CV-02888-PSG, 2016 WL

9   69914, at *3 (N.D. Cal. Jan. 6, 2016), *appeal filed,* 2016 WL 69914 (9th Cir. Apr. 12, 2016).[9]

10   Here, Plaintiff invokes the Court's federal question jurisdiction.  *See* TAC ¶ 1-2; *see also*

11   28 U.S.C. § 1331 (2012).  However, he has failed to state FHA or ECOA claims upon which relief

12   can be granted.  In the absence of other federal claims, it is not "clear from the face of the

13   plaintiff's well-pleaded complaint" that this case presents "a federal question."  *See Easton v.*

14   *Crossland Mortg. Corp.*, 114 F.3d 979, 982 (9th Cir. 1997).  Moreover, the TAC includes no facts

15   establishing subject matter jurisdiction on any other basis.  Without an underlying basis for federal

16   subject matter jurisdiction, the Court may not award declaratory relief.  *See Skelly Oil*, 339 U.S. at

17   674.  Moreover, Plaintiff's request for declaratory relief does not constitute an independent basis

18   for recovery, and may not stand alone.  *See Team Enters.*, 721 F. Supp. 2d at 911; *Andre*, 2016

---

[9] Many other district courts in the Ninth Circuit have reached the same holding as *Andre*. *See, e.g.*, *Starbucks Corp. v. Amcor Packaging Distrib.*, No. CIV. 2:13-1754 WBS, 2014 WL 5780951, at *9 (E.D. Cal. Nov. 5, 2014) ("'A plaintiff is not entitled to such relief without a viable underlying claim, so when the underlying claim is dismissed, the declaratory relief cause of action must be dismissed as well.'" (quoting *Bates v. Suntrust Mortg. Inc.*, No. 2:13-cv-0142-TLN-DAD, 2013 WL 6491528, at *4 (E.D. Cal. 2013))); *Fallbrook Hosp. Corp. v. Cal. Nurses Ass'n/Nat. Nurses Org. Comm.*, No. 13CV1233-GPC WVG, 2013 WL 5347271, at *3 (S.D. Cal. Sept. 23, 2013) ("Since the Court dismisses the underlying claims, the Court also GRANTS Defendant's motion to dismiss the declaratory judgment cause of action."); *Allied Prop. & Cas. Ins. Co. v. Dick Harris, Inc.*, No. CIV. 2:13-00325 WBS, 2013 WL 2145961, at *7 (E.D. Cal. May 15, 2013) ("[B]ecause plaintiff cannot state a claim for relief against defendant, its request for declaratory relief against defendant also falls."); *Soares v. ReconTrust Co.*, No. 12-00070, 2012 WL 1901234, at *7 (N.D. Cal. May 25, 2012) (dismissing Plaintiff's declaratory relief claim because he "is not entitled to such relief absent a viable underlying claim"); *Junod v. Dream House Mortg. Co.*, No. CV 11-7035-ODW VBKX, 2012 WL 94355, at *6 (C.D. Cal. Jan. 5, 2012) ("[W]here as here, the plaintiff has not adequately pled an underlying claim for relief, her declaratory relief claim cannot stand alone, and is therefore subject to dismissal.").

WL 69914, at *3.  Absent an underlying claim for relief, his claim for declaratory relief must be dismissed.  *See Andre*, 2016 WL 69914, at *3.

### III.     LEAVE TO AMEND IS DENIED AS FUTILE

If dismissing the complaint, the court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012) (quotation marks and citation omitted).  "It is well-established that a court may dismiss an entire complaint with prejudice where plaintiffs have failed to plead properly after 'repeated opportunities.'"  *Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993)).

Here, the Court already has granted Plaintiff leave to amend three times, and most recently gave Plaintiff "one last opportunity to amend his pleading," while warning him not to "re-plead substantially similar facts in hope of a different result."  *See Canatella*, 2015 WL 5818070 *6.  Plaintiff again has failed to meet the pleading standard required to overcome a motion to dismiss.  In light of these repeated failures, the Court concludes that Plaintiff cannot meet the pleading requirements, and thus denies leave to amend as futile.  *See Destfino*, 630 F.3d at 959.

### IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant RMS's motion to dismiss and **DISMISSES WITH PREJUDICE** Plaintiff Canatella's TAC.  The clerk is directed to enter judgment in favor of Defendant RMS.  Both parties shall bear their own costs of suit.

**IT IS SO ORDERED.**

Dated: 10/17/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge